SUN MUTUAL INSURANCE COMPANY *v.* T. M. SEARLES ET AL.

1. FIRE INSURANCE. *Iron safe clause. Warehouse book not included.*

The warehouse book of a wholesale merchant, that is not kept at the office where the set of books relating to his business are kept, but at his warehouse, in another part of the town, and used and designed as a check upon the employee in charge of the warehouse, is not a part of the complete set of books required to be kept by the terms of a policy of insurance, and also required to be securely locked in a fireproof safe at night.

2. PROOF OF LOSS. *Waiver.*

An insurance company will be treated as having waived proof of loss where its adjuster, after the fire, takes all the books and papers of the assured for examination, and, after investigating the same, states the amount to be much less than that claimed by the assured, but offers to the assured a compromise, and on the rejection thereof, denies all liability on the policy. *Insurance Co.* v. *Bowdre*, 67 Miss., 620; *Mathews* v. *N. O. Ins. Assn.*, 65 *Ib.*, 301; *Insurance Co.* v. *Sheffy*, 71 Miss., 727; *Insurance Co.* v. *Gibson*, 72 Miss., 58.

3. PRIVILEGE TAX LICENSE. *Sufficient at date of license, but not at time of effecting insurance. Code* 1892, § 3390.

Where a merchant has paid the proper privilege tax, but between

that date and the date of effecting the insurance of his stock of merchandise, the same has so increased in value as to exceed the limit covered by the license, his business becomes one carried on in violation of law, and the contract of insurance, being one made in reference to the business, is void. Code 1892, ? 3390; *Sneed* v. *Insurance Co.*, 72 Miss., 51, distinguished.

4. SAME.  *Instructions.*

In a suit upon the policy, where it is doubtful upon the evidence whether the stock of merchandise has been so increased in value between the date of the license and the issuance of the policy, an instruction for the plaintiff is erroneous that limits the inquiry of the jury to an ascertainment of the value of the stock at the time the license was procured, and the error is not cured by a contradictory instruction for the defendant.

FROM the circuit court of Warren county.

HON. JOHN D. GILLAND, Judge.

The C. J. Searles Company, under assignment, from whom appellees claim, was a corporation doing a wholesale grocery and commission business in Vicksburg.   It had a warehouse on Levee street, in which its stock of merchandise was kept, and had its office on Washington street, in the rear of Ruhman's store, where its books were kept and business transacted.   At the time it commenced business, in March, 1893, it had a stock of merchandise of the value of $9,330.50, which was insured for $7,500.   On June 1, 1893, it paid a privilege tax of $15, and procured the necessary license "on a store where the stock sometimes exceeds $2,000, but never $3,500."   On November 14, 1893, the policy in suit, for $1,250, was procured from the appellant on the stock of merchandise.   On April 1, 1894, an inventory was taken, that showed the value of the stock on hand to be $8,282.12.   On June 1, 1894, the license expired, and, on the fifteenth of the same month, the warehouse, and all its contents were destroyed by fire.

In connection with the foregoing facts, the appellant offered to prove that, at the time of the fire, the company had no license, and did not take out any until after the fire; that it was not renewed until the day after the fire; that it was then renewed as

before, by paying only $15, and that, within a few days after that time, a representative of the company had the $15 license canceled, and took out one for $30, the latter being the tax "on each store where the stock sometimes exceeds $7,000, but never $10,000," and had it dated back as of June 1, 1894. On appellee's objection, the court below refused to admit this evidence, but the $30 license was subsequently introduced by the appellees. It was shown that the total amount of insurance on the property represented by all the policies held by the company was $7,500; that the one in suit contained the ordinary three-fourths value clause, and that, shortly after the fire, the appellee, T. M. Searles, rendered to appellant's adjuster a statement, which he afterwards withdrew and refused to give up, showing a loss of $10,170. As a witness, he testified that, between March, 1893, and June, 1894, the company, of which he was a member, bought a large lot of bagging ahead of time, and had it stored in the elevator, but that it never went into the warehouse, and had no connection with the stock, and was covered by separate policies that also had no connection with the stock, and that they sold this bagging on contract around the country; that the amount of bagging in the elevator on or about June 1, or the latter part of May, 1893, as shown by their invoices, was $4,194.34; that it was stored in the elevator for the First National Bank of Vicksburg, and was sold under contract, to be delivered the following August; that it was held in trust by the elevator company for the First National Bank, and that it never went into their warehouse, and was paid for by the First National Bank; that, taking this $4,194.34 item off of their gross purchases made from March 1, 1893, to June 1, 1893, and deducting net cash sales, leaves $2,690.77, which would be the amount of goods they had on hand on June 1, 1893, if they made no profits, and that it was impossible to figure out their profits.

The company kept at their warehouse, and not at their office on Washington street, where the other books relating to the

business were kept, a warehouse book, in which were entered the items or articles of merchandise actually on hand at any given time. This book was not kept in a fireproof safe, and was destroyed in the fire. It was claimed, on the part of the defendant, that this book was a part of the company's set of books and within the terms of what is termed the iron safe clause of the policy, while the plaintiff showed that it kept a complete set of books at its office, and that this particular book was only kept as a check on the young man who kept its warehouse. The language of the policy is as follows: "2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for, etc. 3. The assured will keep such books and inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building. In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void," etc.

To relieve any insufficiency in the proof of loss, the appellees undertook to prove a waiver on the part of appellant, and showed that the books, papers, etc., of the company were turned over to the adjuster and special agent of appellant and the persons similarly representing the other companies, and that they figured the loss $3,734.78, putting the profits of the company, by guess, at five per cent., but that the loss would have been, according to their figures, $5,435.64 had the profits been estimated at ten per cent; that appellant's special agent and adjuster offered appellees a compromise, which was rejected, and that, on August 6, 1894, as such representative of appellant, he wrote to T. M. Searles denying all liability on the policy.

Appellant's seventh plea averred that the policy sued on was void, because the company carried on its mercantile business without having first paid a state privilege tax and obtained a license as required by law.   The eighth plea of appellant set up that the policy was void, because the company exercised the privilege of carrying on the business of a merchant, having a store in which the stock sometimes exceeds $3,500, without paying the privilege tax and obtaining the license required by chapter 108 of the annotated code.   Demurrers were filed to both pleas, and, the same having been overruled, issue was joined.   The opinion sets out, in substance, the instructions criticised.   Judgment for plaintiff.   Defendant appeals.

*Booth & Anderson,* for appellant.

1. The facts show that when the privilege tax license was issued, it was insufficient for a stock of merchandise of the value of that of the C. J. Searles Company; and an insufficient license is, in its consequences, the same as none at all.   Code 1892, § 3390; *Pollard* v. *Phœnix Insurance Co.,* 63 Miss., 244. But, if mistaken in this contention, it is submitted that the stock largely exceeded $3,500 in value subsequent to the issuance of the license, and prior to that of the policy.   The evidence shows that from the time the company began business until the fire, its stock, whenever the value was ascertained in any way, was largely in excess of the above amount.   The case of *Sneed* v. *British American Insurance Co.,* 72 Miss., 51, is without application to the present controversy.

2. On the facts shown, the warehouse book was a part of the set of books which should have been kept in a fireproof safe, as required by the iron safe clause.   It showed what was on hand at the warehouse.

3. The proof of loss was insufficient, and the adjuster of appellant was by its express limitations without authority to waive the requirements of the policy in reference to proof of loss.   *Gould* v. *Dwelling House Insurance Co.,* 51 N. W. Rep.,

455, s.c. 52 N. W. Rep., 754; *Quinlan* v. *P. W. Insurance Co.*, 31 N. E. Rep., 31; *Wash* v. *Insurance Co.*, 73 N. Y., 10; *Marvin* v. *Insurance Co.*, 85 N. Y., 278; *Porter* v. *Insurance Co.*, 35 N. E. Rep., 678.

*Miller, Smith & Hirsh,* for appellees.

1. The C. J. Searles Company kept at its office a complete set of books, which were turned over for inspection to appellant's adjuster. On the facts shown, the warehouse book kept at its warehouse was not a part of the set of books required to be kept in a fireproof safe.

2. The dealings that took place, after the fire, between appellant's adjuster and the appellee, T. M. Searles, resulting finally in the former's denial of all liability on the policy, constituted a waiver of proofs of loss. *Phœnix Insurance Co.* v. *Bowdre,* 67 Miss., 620; 2 May on Ins. (3d ed.), §§ 473*a*, 469*d*; *Kohn* v. *Traders' Insurance Co.*, 34 Pac. Rep., 1059; *Lamberton* v. *Connecticut Fire Insurance Co.*, 39 N. W. Rep., 76; *Farmers Insurance Co.* v. *Taylor,* 73 Pa., 342; *Bartlette* v. *Fireman's Fund Insurance Co.*, 77 Iowa, 155; *Brink* v. *Merchants' Insurance Co.*, 39 Vt., 442; Clement's Fire Insurance Digest, p. 515; *Little* v. *Phœnix Insurance Co.,* 133 Mass., 380; *Ætna Insurance Co.* v. *Shyer,* 85 Ind., 362; *Perry* v. *Fanueil Hall Insurance Co.*, 11 Fed. Rep., 482; *McPike* v. *Western Insurance Co.*, 61 Miss., 37.

3. The seventh and eighth pleas of the appellant fail to aver that the company had an insufficient privilege license, either at the date of effecting the insurance, or when the fire occurred, and must be taken as relating to the date of the license; and the testimony of T. M. Searles showed that the value of the goods on hand at that time was but $2,690.77. It has been held in this state, without qualification, that, unless it is shown that the privilege license was insufficient when the contract of insurance was made, the insured is entitled to a recovery. *Sneed* v. *British American Ins. Co.*, 72 Miss., 51.

There was nothing in the evidence to show that the stock of the C. J. Searles Co. was any larger on November 14, 1893, when the policy was issued, than on June 1, 1893, when the license was procured. The books of the company had been fully explored by appellant's adjuster, and were in evidence, and, had there been any increase, the appellant could have shown it. There is no question of bad intent involved, but simply the case of a merchant who starts a lawful business, and conducts a lawful business, but whose stock appears to have increased long after the issuance of the policy. If defendant's pleas are correctly interpreted, the only question is, what was the amount of the stock on June 1, 1893, when the license was taken out? But it is clear from the evidence that the amount of the stock was within limits from June 1, 1893, until the inventory was taken, April 1, 1894, and therefore the subsequent increase after the policy was issued cannot affect its validity. The testimony with regard to the bagging at least made it a question of doubt whether there was enough on hand at the issuance of the policy to have caused the whole stock to exceed $3,500 in value, and the jury solved that doubt in favor of the appellees. The stock on hand when the license was taken out, being within the limits covered by it, that state of things will be presumed to have continued until the contrary is shown. To deny relief on account of the nonpayment of a privilege tax, the proof must be clear and convincing.

4. The license for $30 was certainly large enough to cover the stock, and it is immaterial that it was obtained after the fire, if during the month of June, 1894, since the law provides that such licenses may be issued at any time during the month, and dated the first day of the month, and shall be good for one year from their date. Code 1892, § 3408.

5. The C. J. Searles Co. was a commission merchant, dealing in grain, flour and other articles of that character, and its warehouse was a private one, used for its own purposes, and not a "store," in ordinary acceptation or in the sense in which

that word is employed in the statute, and the company was under no duty to pay a privilege tax. No privilege tax is imposed on commission merchants or on persons keeping private warehouses. Section 3390, code 1892, relates to a store where a stock is carried.

Argued orally by *J. Hirsh*, for the appellees.

WHITFIELD, J., delivered the opinion of the court.

We do not think the warehouse book is shown by this record to be a part of the set of books required by the policy to be kept in the iron safe. The proofs of loss were clearly waived. We reaffirm the principles on the doctrine of waiver announced in *Phœnix Insurance Co.* v. *Bowdre*, 67 Miss., 620; *Matthews* v. *N. O. Insurance Association*, 65 Miss., 301; *Liverpool, etc., Insurance Co.* v. *Sheffey*, 71 Miss., 922; *Rivara* v. *Queen Insurance Co.*, 62 Miss., 727, and *Home Insurance Co.* v. *Gibson*, 72 Miss., 58. In the last named case, the case of *Cleaver* v. *Insurance Co.*, 65 Mich., 530 (32 N. W., 660), is traced to its final determination and the true ground upon which it rests distinctly pointed out and the case shown to be in perfect accord with *Insurance Co.* v. *Earle*, 33 Mich., 143, from which the rule in Matthews' case, *supra*, is taken.

The C. J. Searles Co. took out, on June 1, 1893, a privilege tax license under § 3390 of annotated code of 1892, authorizing it to carry a stock never exceeding thirty-five hundred dollars. On the fourteenth day of November, 1893, this policy was taken out. The appellant, by its seventh and eighth pleas, defended upon the alleged ground that the C. J. Searles Co. carried a larger stock than thirty-five hundred dollars during the year covered by the license, from June 1, 1893, to June 1, 1894, and in the period from June 1, 1893, till the date when the contract of insurance was made, November 14, 1893; that the business was hence illegal, and that this contract of insurance was "a contract made in reference to the business" thus

carried on in disregard of § 3390 of chapter 108 of code of 1892, and was therefore void.

On this issue the court gave for the plaintiff instruction numbered four, in these words: "If the jury believe from the evidence that the C. J. Searles Company, on the first day of June, 1893, was doing business with a stock not in excess of thirty-five hundred dollars actual cash value, then they will find for the plaintiffs upon the issues raised by the seventh and eighth pleas, and the plaintiff's replications thereto."

If this charge stood alone, we would be led to believe that the learned judge below had misconceived the holding of this court in *Sneed* v. *British American Assurance Co.*, 72 Miss., 51. But the court charged the jury for the defendant several times, in different forms, in charges numbered two, four and six, that (see the sixth) "if they believed from the evidence that, on the first day of June, 1893, or at any time thereafter up to and including the fourteenth day of November, 1893, the C. J. Searles Company's stock exceeded $3,500, they would find for the defendant."

These instructions, which correctly announce the law, show that the learned judge below very accurately understood the Sneed case.

There are only two views, then, in which the fourth instruction for the plaintiff could have been regarded as proper by the court below. The first is, that "the seventh and eighth pleas, and the replications thereto," limited the defense on this point to the allegation that the plaintiff had a stock exceeding $3,500 on June 1, 1893, on that very day, and did not present the issue whether, though the stock did not exceed $3,500 on June 1, 1893, it might not have exceeded that sum in value between June 1, 1893, and November 14, 1893. But this view is too technical. The other view is, that, while the contract of insurance would be void, if the assured, though it did not have a stock in excess of $3,500 on June 1, 1893, yet did have a stock in excess of that sum between June 1, 1893, and November 14,

1893, yet there was no testimony at all to go to the jury on that issue. And this view is most earnestly insisted upon by counsel for appellee. But in this view, after a most careful examination of the record, we cannot concur; and the charge would be, in that view, one upon the weight of evidence. These pleas are, of course, affirmative pleas, and the burden of proof under them on appellant.

But it is undisputed that the appellees paid for this business, on March 13, 1893, $9,330.51; that, on April 1, 1894, the inventory then taken showed the value of the stock to be $8,282.12, and that the proofs of loss showed the value of the stock destroyed by the fire on June 15, 1894, to be $8,956.77. There is testimony — quite obscure — as to some bagging; whether two lots or one is not clear—apparently two lots. As to one lot, at least—the $4,194.34 lot—there seems to have been enough to leave it certainly very questionable on this record whether that lot of bagging was not to be taken as part of the stock of the C. J. Searles Co. With this testimony in the record, we think the jury should have been left to draw their own conclusion as to whether the C. J. Searles Co. did carry a stock in excess of $3,500 between June 1, 1893, and November 14, 1893, when this contract of insurance was made. The fourth instruction for plaintiff, in either of the two views indicated, was therefore erroneous.

Counsel for appellees misconceive the Sneed case. That case held merely that where a merchant has paid the proper privilege tax, and his stock has been kept within the limit covered by that privilege tax license up to the time he makes a contract of insurance, his business was a legally licensed business for the whole time from the taking out of the privilege tax license up to and including the time of the making of the contract of insurance, and that such contract of insurance is one, therefore, made in the course of a legally conducted business, and, being so valid, is not made invalid by an increase of stock over the legal limit subsequently to the making of the contract of

insurance. But where a merchant has paid the proper priv-
ilege tax, but, between that date and the date of making the
contract of insurance, his stock exceeds the limit covered by
the license, his business becomes, *eo instanti*, one conducted in
violation of chapter 108 of annotated code of 1892, is illegal,
not protected by the license, and the contract of insurance is,
in such case, a contract " made in reference to the business "
thus illegally " carried on," and is void. To hold otherwise
would open the door to limitless frauds. In all other respects
the learned judge below charged the law correctly. The in-
structions refused to the defendant were properly refused, and
all the modifications of defendant's instructions were strictly
accurate. For the error indicated, we feel constrained to
     *Reverse the judgment and remand the cause for a new trial.*

*Miller, Smith & Hirsh* and *Henry & Scudder,* for appellees,
filed a petition for reargument, together with a brief discussing
the law and the evidence. It was urged that sufficient value
had not been given to the presumptions of law arising in favor
of appellees; that a peremptory instruction is always upon the
weight of the evidence, and the evidence in the case at bar was
such as to entitle appellees to a peremptory instruction; that
the contradictory instructions given to appellant, being unsup-
ported by the facts, in nowise affected appellee's right to a
recovery under their fourth instruction; that the value of the
stock of merchandise at the time the two inventories were taken,
and when the fire occurred, does not prove, or tend to prove,
what the value was between June 1, 1893, the date of the
license, and November 14, 1893, the date of the policy; that
the value on June 1, 1893, being within the limits of the license,
that state of things should be treated as continuing until some
change is affirmatively shown, and that the two inventories and
proof of loss have no significance, in the absence of evidence
connecting them with each other so as to cover the period ex-
tending from the issuance of the license to that of the policy;

that the jury evidently accepted Searles' statement that there was only $2,690.77 of stock on hand June 1, 1893, and, in the absence of all evidence to the contrary, were justified in inferring that there had been no subsequent increase of stock prior to the issuance of the policy, if they so found, and might also very properly have concluded, on the facts shown, that the bagging in the elevator that would have swollen the stock beyond the limits of the license did not belong to the company, but to the First National Bank; that the statute imposes the tax "on each store," and, inasmuch as the policy relates only to the goods in the warehouse, which is held to be a store, there is nothing in the evidence to show that the goods in the warehouse alone exceeded the limits of the license, and the appellees were entitled to recover, though the elevator may have been used as another store, and no license procured to authorize the business there carried on (*Harness* v. *Williams*, 64 Miss., 600); that the seventh and eighth pleas of appellant do not say at what time during the year, covered by the license, the stock exceeded its limits, and, according to well-settled rules thereof, should be taken as alleging the insufficiency of the license as of the date of its issuance, and that so taken, appellees' fourth instruction was unobjectionable.

*Reargument denied.*