FIDELITY-PHENIX FIRE INS. CO. *v.* REDMOND.*

(Division A. March 15, 1926. Suggestion of error overruled Feb. 21, 1927.)

[107 So. 377. No. 25155.]

1. INSURANCE. *Condition held waived by general agent issuing policy with knowledge of use of gasoline on premises, and at a premium corresponding to risk therefrom.*

   Condition of policy prohibiting the keeping or use of gasoline on premises was waived by general agent of company issuing policy with knowledge of use of gasoline in a business conducted in the building, and at a premium in accordance with the risk from such use.

2. INSURANCE. *Right from waiver of gasoline clause by agent, with knowledge, issuing policy held not lost by nonwaiver agreement, on which amount of loss was submitted to arbitration.*

   Nonwaiver agreement on which amount of loss was submitted to arbitrators, in view of its declared purpose to preserve the rights of all parties, did not destroy insured's right from waiver of gasoline clause by company's general agent issuing policy with knowledge of, and at rate corresponding to, risk from use of gasoline in business on premises.

3. INSURANCE. *Risk held not shown increased to knowledge of insured by his tenant's use of charcoal burner after he had ordered it out.*

   Provision of policy against increase of hazard by means within insured's control, or knowledge, was not shown violated by presence of a charcoal burner in tenant's possession, testimony being undisputed that insured had ordered it out, and that it was

then removed, and that he never knew that it was thereafter in the building.

4. INSURANCE. *Electric ceiling fans and electric chandeliers held, by reason of nature of their attachment, covered by policy on building.*

Electric ceiling fans and electric chandeliers, being so attached to the insured building that they could not be removed without damaging or defacing it, were covered by the policy.

5. INSURANCE. *Metal shed over sidewalk held excluded from policy on building as an "awning."*

A metal shed, attached to insured building, and extending over sidewalk, is within clause of policy excluding liability for loss to "awnings."

ON SUGGESTION OF ERROR.

6. INSURANCE. *Forfeiture from breach of condition of policy held waived by adjuster, with knowledge, negotiating for adjustment, without suggesting breach.*

Where insurer's adjuster, with knowledge of breach of condition of fire policy against presence of gasoline on the premises, without suggesting forfeiture, entered into long negotiations with insured for adjustment, encouraging him to submit estimates, which was done at considerable expense, there was a waiver of forfeiture.

---

*Corpus Juris-Cyc. References: Awning, 6 C. J., p. 876, n. 73; Fire Insurance, 26 C. J., pp. 90, n. 48, 61 New; 321, n. 78; 543, n. 9; Effect of knowledge of agent that prohibited articles were on premises as waiver of condition in policy, see note in L. R. A. 1917C, 294; 14 R. C. L., p. 1167, et seq.; 3 R. C. L. Supp., p. 351.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Action by S. D. Redmond against the Fidelity-Phenix Fire Insurance Company. Judgment for plaintiff for less than claimed, and defendant appeals, and plaintiff brings cross-appeal. Affirmed.

*Watkins, Watkins & Eager,* for appellant.

I. The directed verdict requested by the appellant should have been given. The non-waiver agreement entered into between A. J. Miazza, adjuster for the ap-

pellant, and the appellee expressly provided against any waiver and by virtue of its execution preserved all the defenses of the company in respect to said policy; and, consequently, a verdict should have been directed in favor of the appellant.

This court has heretofore expressly decided that an effort to compromise by offering to pay a sum less than the amount claimed will not constitute a waiver. *N. O. Ins. Ass'n* v. *Matthews,* 65 Miss. 313.

It is our contention that even if a waiver had been committed by the adjuster prior to the execution of the non-waiver agreement, that by joining in the execution of a non-waiver agreement thereafter, the insured himself waived the waiver and became bound by the terms of the non-waiver agreement.

See 26 C. J., page 393, paragraph 505, for the general subject of estoppel and waiver. See, also, *Ins. Co. of North America* v. *Caruthers* (Miss.), 16 So. 911; *Tedder* v. *Home Ins. Co.* (Ala.), 103 So. 674.

The courts have uniformly sustained the validity of non-waiver agreements and also the stipulation of the policy that the insurer shall not be held to waive its rights or any provision of the policy by investigating the loss or by demanding an appraisal or arbitration or by requiring an examination of the insured under oath. 26 C. J. 405, paragraph 519, and cases there cited.

It has also been expressly held that an agreement and submission to appraisals and an award thereon under a non-waiver does not preclude the insurance company from setting up any defense it may have as to liability on the policy. *Urbaniak* v. *Fireman's Ins. Co. of Newark,* 116 N. E. 413, 227 Mass. 132; *Neil Bros. Grain Co.* v. *Hartford Fire Ins. Co.,* 1 Fed. 2nd, 904.

We submit, therefore, that upon the execution of the non-waiver agreement between the representative of the appellant and the appellee himself a new agreement was entered into and any alleged waiver theretofore committed by the representative of the company then became waived itself by the appellee.

II.  If the evidence was not sufficient to warrant the granting of the directed verdict requested by the appellant, the question should have been submitted to the jury on the weight of the evidence on appropriate instructions.

A.  The question of whether or not the defense of the appellant had been waived by the acts and conduct of its adjuster, Mr. Miazza, should have been submitted to the jury as a question of fact because the testimony was conflicting.  *Insurance Companies* v. *Sorsby, etc.*, 60 Miss. 313, is recognized as a leading case on the question of waiver in respect to a fire insurance contract. See, also, *McPike* v. *Western Ins. Co.*, 61 Miss. 42; *New Orleans Ins. Ass'n* v. *Matthews*, 65 Miss. 313; *Greenwood Ice & Coal Co.* v. *Georgia Home Ins. Co.*, 72 Miss. 50; *McFarland* v. *Kittanning Ins. Co.*, 134 Pa. St. 500, 19 A. S. R. 723, 19 Atl. 796.    The fact that an appraisal was entered into for the purpose of establishing the amount of the loss has no bearing on the question of the final liability of the company.  *Riverside Development Co.* v. *Hartford Fire Ins. Co.*, 105 Miss. 213, 62 So. 169.

B.  By the terms of the policy it became void and unenforcible "if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above described premises benzin, benzol, dynamite, ether, fireworks, gasoline. . . ." The presence of gasoline, as shown by the record, constituted, therefore, a defense to a suit on the policy unless this defense had been waived by the appellant through its adjuster, and which was a matter to be submitted to the jury as the evidence was in direct conflict as to whether the adjuster had committed a waiver.  *Rivers* v. *Queen's Ins. Co.*, 62 Miss. 720; *Liverpool, London & Glove Ins. Co.* v. *Van Os & Shuster*, 63 Miss. 441; *Westchester Fire Ins. Co.* v. *Oceanview Pleasure Pier Co.*, 106 Va. 633; *London & L. Fire Ins. Co.* v. *Fischer*, 92

Fed. 500, 34 C. C. A. 503; *Arnold* v. *American Ins. Co.,* 84 Pac. 182, 148 Cal. 660; *Norways* v. *Thuringia Ins. Co.,* 68 N. E. 551, 204 Ill. 334; *Kohlman* v. *Salvage,* 54 N. Y. S. 230.

The evidence clearly demonstrates that had it not been for the flagrant violation of the conditions of the policy in respect to the keeping and use of gasoline on the premises the fire would not have occurred. This is a risk and hazard which this appellant did not agree to cover and it should not now be held liable therefor.

C.   By the terms of the policy it is also provided that it shall be void and unenforcible "if the hazard be increased by any means within the control or knowledge of the insured." The hazard having been greatly increased on account of the presence of a charcoal furnace with a fire in it and also taken in connection with the proximity of the gasoline, the policy was, therefore, rendered void unless a waiver had been committed by Mr. Miazza and which being in dispute was a matter that should have been submitted to the jury for decision. *Leonard* v. *Northwestern Nat'l Ins. Co.,* 290 Fed. 318.

III.   Irrespective of the above propositions, no recovery should have been allowed for the awning and electric light fixtures and ceiling fans.

A.   The policy of insurance expressly provides, "This company shall not be liable for loss to accounts, etc., nor, unless liability is specifically assumed hereon, for loss to awnings. . . ."The trial court properly held that no recovery could be had for the awning because the language of the policy clearly and without ambiguity excluded the same.

B.   The appraisers also included in their finding loss and damage to five electric ceiling fans and the electric chandeliers and fixtures. These being articles of personal property and not a part of the building, should not have been included and are not covered by the policy.

On first consideration it might appear that these light fixtures and ceiling fans were insured under the terms of the policy, but upon examination of the authorities, the rule is unvarying, both in England and in this country, that such articles are as much chattels as is an old fashion lamp that sat upon the table or any piece of furniture used about the premises. 11 R. C. L. 1078; *Towne* v. *Fiske,* 127 Mass. 125, 34 Am. Rep. 353; *Capehart* v. *Foster,* 61 Minn. 132, 52 A. S. R. 583; *Rogers* v. *Cros,* 40 Mo. 91, 93 Am. Dec. 300; *McKeage* v. *Hanover Fire Ins. Co.,* 81 N. Y. 38, 37 Am. Rep. 471; *Vaughen* v. *Haldeman,* 33 Pa. St. 522; *Hall* v. *Law Guarantee & Trust Soc.,* 22 Wash. 305, 60 Pac. 643, 79 A. S. R. 936. See, also, *Jarechi* v. *Philharmonic Soc.,* 79 Pa. St. 403, 21 Am. Rep. 78; *Montague* v. *Dent,* 10 Rich. L. S. C. 135, 67 Am. Dec. 572; *American Laundry Machine Co.* v. *Citizens National Life Ins. Co. et al.,* 107 Miss. 108, 65 So. 113; *I. C. R. R.* v. *Green,* 86 So. 814; *Boone* v. *Mendenhall Lbr. Co.,* 97 Miss. 554, 52 So. 584; and *Weathersby* v. *Sleeper,* 42 Miss. 732.

*Howie & Howie* and *Lamar F. Easterling,* for appellee.

I. It needs no citation of authorities to show that an insurance company may waive any warranty provision or stipulation in the policy placed in said policy for their benefit. Counsel take the position that Redmond having signed a non-waiver of agreement, as shown by the record, on December 17, 1924, waived any prior waiver there might have been on the part of the insurance company through its agents. Counsel entirely overlooked the waiver as shown by the testimony of the general agent who wrote the policy. If Mr. Roberts, the general agent, knew that a pressing club was being operated in the building and that gasoline was generally kept and used in pressing clubs, then under the authorities of this

and other states and on general principles of law, the company will be held to have waived that particular clause of the contract.

The acceptance and retention of the premium with full knowledge of the risks and all the facts will itself show a waiver of the condition. *Rivara* v. *Queen Ins. Co.,* 62 Miss. 720. See, also, *Liverpool, etc., Ins. Co.* v. *Sheffy,* 71 Miss. 926, 16 So. 307; *Mitchell* v. *Miss. Home Ins. Co.,* 72 Miss. 58, 18 So. 86, 48 A. S. R. 535; *Home Ins. Co. of N. Y.* v. *Gibson,* 72 Miss. 63, 17 So. 13; *Liverpool, etc., Ins. Co.* v. *Farnsworth Lbr. Co.,* 72 Miss. 561, 17 So. 445; *Sun Mut. Ins. Co.* v. *Searles,* 72 Miss. 69, 18 So. 544

Paraphrasing the above cases, it would be shocking to allow an insurance company to accept the premium, leading an insured to believe that he was insured and then after the fire to claim that he could not collect because gasoline was used in a pressing club in the building, the agent who wrote the policy knowing at the time that a pressing club was being operated in the building and that gasoline was being used. On the question of retention of premium see *Miss. Fire Ins. Co.* v. *Dobbins,* 33 So. 506, 507. See, too, *Mechanics & Traders Ins. Co.* v. *Smith,* 79 Miss. 143, 30 So. 362.

In *Fore* v. *U. S. Fire Ins. Co.,* 92 So. 628, Judge SMITH held that a tender of the premium was unnecessary in case of breach of the additional insurance clause of the policy.

In the *Mount case,* 44 So. 165, the court distinguishes that case from the Dobbins cases and held that the insurance company had the right to tender with its plea the unearned portion of the premiums and cites *Mitchell* v. *Ins. Co.,* 72 Miss. 53. In the Mount case it was further held that the insurance company had done nothing to mislead the plaintiff. The Mitchell case does not refer to the *Smith case,* 72 Miss. 53, which is referred to in the Mount case.

II. Counsel argues at great length as to the gasoline clause in the contract. But we will not enter into any discussion of this because we think that the company having accepted the risk and issued a policy and fixed the rate knowing that a pressing club was being operated therein and that gasoline was being used therein, waived the defense of non-compliance with this clause and the case stands exactly as if the policy had been written with this clause crossed out.

Counsel also presents the theory that the juxtaposition of the coal burner and the gasoline presented the case of increased hazard and that because of the combination of the two, the policy was void. We have two answers to that. The first is that Mr. Roberts, the agent, having fixed the rate and issued the policy and collected the premium knowing that a pressing shop was being operated therein and that gasoline was generally used in such shops, thereby waived this clause and eliminated the same entirely from the policy. Second, Redmond had objected to the use of the coal burner and prohibited its use.

It is absolutely clear that Dr. Redmond had objected to the use of the charcoal burner and had ordered Cy Willis not to keep it in the building. Therefore, the charcoal burner was not within the control or knowledge of the insured and there is not evidence anywhere in the record to show that the hazard was increased by any means within the control or knowledge of Dr. Redmond.

III. Counsel state that no recovery should have been allowed for the so-called awning, electric light fixtures and ceiling fans.

The word *awning* was intended to cover only the usual cloth awning fixed and attached as sheds to windows and doors. There is no doubt that the general acceptance of the word *awning* is a roof or shade made of cloth. This was not the nature of the so-called awning or shed involved in this case. It was just as much a part of the

building as the door, roof, window or stairway. It was built with the building, permanently fixed to the building through iron rods extending through the walls, made of woven wire inclosed with plate glass on an iron frame and attached to and supported by the building by means of iron rods affixed to the building. Can it be said that this is the kind of an awning referred to in the policy?

A great deal of confusion is to be found in the cases as to what is and what is not personal property. We do not think any one question is left in more uncertainty and doubt. See *Darden* v. *Liverpool, etc., Ins. Co.,* 109 Miss. 501; *Richardson* v. *Borden,* 42 Miss. 71, 2 A. R. 595.

All these written pages which are written in the policy by the insurance company, being presumably put there by the insurance company for its benefit, are to be strictly construed against such insurance company and in favor of the insured. See *Liverpool, etc., Ins. Co.* v. *Van Os,* 63 Miss. 441.

Our court has held in *Emerich* v. *Ireland,* 55 Miss. 390, that fencing is a fixture and a part of the freehold and one removing the same is liable in damages to the owner of the land. See, too, *Weathersby* v. *Sleeper,* 42 Miss. 732; *Duff* v. *Schneider,* 54 Miss. 245; *Tate* v. *Blackburn,* 48 Miss. 1; *I. C. R. R. Co.* v. *Hoskins,* 80 Miss. 730, 32 So. 150; *Stillman* v. *Hamer,* 7 How. 421; *Terry* v. *Robins,* 5 S. & M. 291; *Richardson* v. *Borden,* 42 Miss. 71, 2 Am. Rep. 595; *Weathersby* v. *Sleeper,* 42 Miss. 732; *McMath* v. *Levy,* 74 Miss. 450, 21 So. 9, 523; *Hayden* v. *Garmania Fire Ins. Co.* (Mo.), 26 L. R. A. 107.

Applying the test set forth by decisions of this court, it cannot be doubted for a moment that this metallic shed was fixed to the building on the land and that it became a part of the realty and partakes of all its incidents and property. Counsel for appellant complain of the ruling of the court below in allowing recovery for the electric light fixtures and ceiling fans. The same decisions cited by us under the head of the awning or metallic shed are applicable here.

Counsel for appellant say that the weight of authority is to the effect that electric fixtures are personal property, but we do not think that electric fixtures are personal property, and we do not think that the cases cited by counsel fully bear out this contention. It is true that courts have been disposed to treat light fixtures as movable chattels or personal property, this going back to the time when candles were used.

Nowadays no person would buy a house if all the electric fixtures were to be removed, or if the seller had the right to remove them. For the purpose of the use they are just as important as a part of the whole building as windows and doors.

The next test that we look to is the manner in which the fixtures are attached to the building. Furthermore, as shown by common experience and observation, these electric fixtures are built into the house when the house is built with the idea of permanency, with the idea of serving the building as long as it remains a building. So we have the intent and method which are after all the safest and most reasonable test as to whether the fixtures are chattel. See 19 Cyc. 1045.

Citations from the general rule applicable to this subject will conclusively demonstrate that the electric light fixtures and the ceiling fans, having been intended to be permanent, being permanently annexed and being for the use of the building and a part of the building, meet every test, and that the court below was eminently correct in allowing recovery for the ceiling fans and electric fixtures.

COOK, J., delivered the opinion of the court.

The appellee instituted this suit in the circuit court of the First district of Hinds county against the appellant on a fire insurance policy. The policy issued by the appellant was one of three policies of equal amounts covering a brick store located on Farish street in the city

of Jackson, and the suit was to recover appellant's proportionate share of the appraised loss caused by a fire in this building, and upon the final hearing a peremptory instruction was granted in favor of the appellee for one-third of the appraised loss, less one-third of the loss on a shed or awning over the sidewalk. From the judgment entered in pursuance of this instruction an appeal was prosecuted by the insurance company, while a cross-appeal has been presented by the appellee from the judgment denying a recovery for one-third of the appraised value of the awning or shed.

To the declaration the appellant pleaded the general issue, and also the provisions of the policy that it should be void if gasoline should be kept, used, or allowed on the insured premises, or if the hazard should be increased by any means within the control or knowledge of the insured, and gave notice that it would offer evidence to prove that the fire which damaged the building was caused directly by the presence of gasoline in the building, and also an increased hazard caused by a charcoal burner in the building.

To the appellant's pleas and notice the appellee replied that the hazard had not been increased with his knowledge or consent; that the gasoline which caused the fire was kept in a portion of the building which had been leased, and which was used by the lessee for the purpose of conducting a pressing shop therein; that the general agent who wrote the policy had knowledge of the fact that this pressing shop was being conducted in the building, and that gasoline was being used in this shop; that the representative of the appellant company who undertook to adjust the loss had knowledge of the fact that the fire was caused by the overturning of a small quantity of gasoline; that, with knowledge of this fact, the adjuster actually adjusted with the appellee the loss on the personal property in the building, and continued negotiations with regard to the loss on the building for about fifteen days, requiring the appellee to incur large

expense in furnishing several estimates of the loss and damage; that, after these negotiations had continued for about some fifteen days, some disagreement arose as to whether certain items were covered by the policy, and thereupon the adjuster required the appellee to sign a nonwaiver agreement so as to refer the whole matter to arbitration under the terms of the policy; that the appellant did not deny liability under the policy at any time from the date of the fire until after the arbitrators had made their final report; and that, by reason of the acts, conduct, and representations of its general agent and adjuster, the appellant had waived the alleged breaches of the contract of insurance.

The policy sued on was written by Wharton & Roberts, general agents of the appellant company, and Mr. H. C. Roberts, one of these general agents, testified that his firm had carried insurance on this property prior to this policy; that he had examined the building a number of times before this policy was issued; that he passed the building almost daily, and knew what it was used for; that, when he issued this policy, he knew that a pressing club or shop was being operated in the building; that he fixed the rate for the insurance with knowledge of what the building was used for, and with a view of the risk involved; and that he knew as a matter of fact, and had always known, that all pressing clubs use a limited quantity of gasoline.

There was also testimony showing that the fire was caused by the overturning in the pressing shop of a jug containing gasoline in some quantity less than a gallon. The testimony further showed without contradiction that on one occasion the appellee discovered that his lessee was using a charcoal burner in the building; that he ordered it removed at once, which was done; and that he never thereafter knew that this burner was returned to and used in the building.

The agent who issued this policy was a general agent of the appellant company, clothed with authority to

make contracts of insurance and issue policies, and the
company is bound by the knowledge of this agent of con-
ditions existing in the building at the time the policy was
issued. With full knowledge of the fact that gasoline
was being used in the building, this agent fixed and ap-
plied the premium rate in accordance with the risk in-
volved, and, when he issued the policy under these cir-
cumstances, the condition of the policy prohibiting the
use or deposit of gasoline was thereby waived. This
has been the holding of this court in a long line of de-
cisions, but no better statement of the rule may be found
than that contained in the case of *Rivara* v. *Queen's In-
surance Co.*, 62 Miss. 720, where the court said:

"A condition in an insurance policy prohibiting the
use or deposit of certain articles may be waived, and is
waived, if the agent taking the insurance knew at the
time it was taken that the prohibited articles were used
or kept, or were to be used or kept, on the premises.
Flanders on Fire Ins. 324.

"In such case the insurance company cannot claim that
it has been wronged or deceived, and to permit it to is-
sue a policy and take the benefits of the contract, know-
ing at the time that it is not bound thereby, and after-
wards to avoid liability thereon, upon the ground that
something existed or did not exist of which the com-
pany or its agent was fully aware at the time the contract
was made, would be repugnant to that sense of justice
and morality which is and should be inculcated by law.
Wood on Fire Ins. 279, 601, 843.

"If the assured has been guilty of no fraud, the insur-
er is estopped from setting up the breach of any condi-
tion of the policy, when it knew at the time the policy
was issued that the condition was inconsistent with the
facts, or the breach of any condition after the policy was
issued, if it has induced the assured to believe that such
breach was waived and has thereby misled him."

This doctrine has been announced in many other cases,
among them being the cases of *Mitchell* v. *Insurance Co.*,

18 So. 86, 72 Miss. 53, 48 Am. Rep. 535; *Insurance Co.* v. *Gibson,* 17 So. 13, 72 Miss. 58; *Insurance Co.* v. *Farnsworth,* 17 So. 445, 72 Miss. 561; *Insurance Co.* v. *Searles,* 18 So. 544, 73 Miss. 62; *Union & Nat. Ins. Co.* v. *Wylie,* 70 So. 835, 110 Miss. 681; and *Mitchell* v. *Aetna Insurance Co.,* 71 So. 382, 111 Miss. 253.

After the negotiations between appellant's adjuster and the appellee had been in progress about fifteen days, the appellee was required to sign a nonwaiver agreement before the controversy as to the amount of the loss which would be submitted to arbitrators under the terms of the policy, and the appellant now contends that the signing of this nonwaiver agreement by the appellee waived any prior waiver on the part of the insurance company, and restored the right of the company to enforce the condition of the policy prohibiting the use of gasoline on the insured premises. The nonwaiver agreement provides, in part, that— "Any action taken by said parties of the second part in investigating the cause of fire or investigating and ascertaining the amount of loss and damage to the property of the party of the first part caused by fire alleged to have occurred on 1st December, 1923, shall not waive or invalidate any of the conditions of the policies of the parties of the second part, held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement."

It seems clear that the purpose of this provision was to preserve and maintain the rights of the parties as they existed at the time of the execution of the instrument. It expressly provides that it shall not waive or invalidate any of the rights of either of the parties to the agreement. By reason of the waiver arising by virtue of the knowledge of the general agent of the conditions existing at the time of the issuance of the policy, a valuable right had long since accrued to the appellee, and the only effect of this agreement was to preserve the status of the parties as it existed at the time of its execution. If there could be any doubt that such was the

effect of the provision of the agreement already quoted herein, it is removed by the further provision of the agreement, which says:

"The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of the loss or damage, without regard to the liability of the parties of the second part."

The appellant further contends that the presence of a charcoal burner in the building increased the hazard in violation of the provision of the policy that it shall be void and unenforceable, "if the hazard be increased by any means within the control or knowledge of the insured." The testimony is positive and undisputed that the insured objected to the use of this burner by his tenant, and had ordered it removed from the building, and that he never thereafter had any knowledge of the fact that it was kept or used in the building, so we conclude that there is a total failure to show that the hazard was increased by any means within the control or knowledge of the insured.

The appellant further contends that no recovery should have been allowed for loss and damage to five electric ceiling fans and electric chandeliers and fixtures attached to the building, for the reason that they are personal property, and not a part of the building, and are not covered by the policy.

The testimony was to the effect that, when the building was constructed, special wiring was placed therein for these ceiling fans. This wiring went through the ceiling joists to openings through the ceiling, and these fans were securely attached to these wires, and also attached to the ceiling by spikes driven in the joists. The lighting fixtures consisted of brass chandeliers securely attached to the ceiling, with the wires from these fixtures connected with the wiring of the building.

There is much conflict in the authorities as to whether gas and electric light fixtures retain their quality of

personal property when put into place in the buildings, and the cases are especially numerous which hold that gas fixtures which are simply screwed onto projections of gas pipes from the walls, left for that purpose, and which can be detached by simply unscrewing the fixture, do not become a part of the reality, but this court does not seem to have previously passed upon the exact question.

It has been said by the court that, while there are many well-defined rules applicable to the subject, yet what is or is not a fixture seems to depend on the particular facts and circumstances surrounding each particular case, and —"It will be found upon examination that, in determining the questions whether a thing is a chattel or fixture, reference must be had to the nature of the thing itself; the position of the party placing it where found; the probable intention in putting it there, and the injury which would result from its removal; and we must also consider the object of the party in placing the article on the premises with reference to trade, agriculture, or ornament." *Richardson* v. *Borden,* 42 Miss. 71, 2 Am. Rep. 595.

Again, in the case of *Weathersby* v. *Sleeper,* 42 Miss. 732, the court said:

"Whether an article is personal property or a fixture must be determined by taking into consideration its nature, mode of attachment, purpose for which used, and the relation of the party making the annexation, and other attending circumstances indicating the intention to make it a temporary attachment or a permanent accession to the realty. . . . In some instances the intention to make the article a fixture may clearly appear from the mode of the attachment alone, as where a removal cannot be made without serious injury to the property by the act of severance. But where the attachment is but slight, and does not enter into the physical structure of the realty, this intention must be gathered from the

nature of the article and the other attending circumstances.''

In the case of *Richardson* v. *Borden, supra,* it was said that ''the doctrine is well established that, as between the executor and heir, the vendor and vendee, mortgagor and mortgagee, the strict rule is applied in favor of the heir, vendee, and mortgagee, holding many articles to be fixtures, and as belonging to the freehold, which would not be so as between landlord and tenant. In one class of cases the rule of construction is rigorous and stringent, in the other it is relaxed and liberal,'' and we think that upon reason and principle the same rigorous and stringent rule should apply in favor of the insured and against the insurer. The testimony in this case shows that these fixtures were so attached to the building that they could not be readily removed without damaging or defacing it, and we think that as between the insured and insurer they became a part of the realty and were covered by the policy.

The court below denied a recovery for the loss or damage to a metal shed or awning which was attached to the front of the building and extended over the sidewalk in front thereof, and from this action of the court a cross-appeal has been prosecuted. The policy of insurance contains the express provision that—''Unless liability is specifically assumed thereon, this company shall not be liable for loss to awnings,'' etc.

The proof shows that the shed or awning in controversy was composed of an iron frame securely attached to the building with iron bolts, and covered with glass protected by wire, and the cross-appellant earnestly contends that this shed or awning was so constructed and attached to the building as to become a part of the realty, and was, therefore, covered by the policy. We think it must be readily conceded that this shed or awning was a fixture, but that is not controlling in the decision of the question presented. The policy contract expressly provides that there should be no liability for loss or

damage to awnings, and the parties had the right to designate the particular property to be covered by the policy, and to contract that there should be no liability for loss or damage to any particular part of the insured premises. The controlling question presented is whether or not the covering in front of this building can be classed as an awning. Webster's New International Dictionary defines an awning as "a roof-like cover, usually of canvass, extended over or before any place as a shelter from the sun, rain, or wind."

This definition of an awning is broad enough to include the character of covering here involved, and, since it is expressly provided by the contract of insurance that there should be no liability for loss or damage to awnings, we think the court was correct in denying recovery for this item. It is not difficult to conceive a very good reason why an insurance company would decline to insure a roof-like cover or awning, which was covered with glass, at the same rate as that fixed for the building.

The judgment of the court below will therefore be affirmed on direct and cross appeal.

*Affirmed on direct and cross appeal.*

## ON SUGGESTION OF ERROR.

This cause was heretofore affirmed, and the appellant has filed a suggestion of error, challenging the correctness of the decision only upon the holding therein that the testimony of Mr. H. C. Roberts, a general agent of the appellant who issued the policy sued on, showed that at the time the policy was issued he had knowledge of the fact that a pressing club or shop was being operated in the building which was burned; that he fixed the rate for the insurance with knowledge of what the building was used for, and with a view of the risk involved; that he knew as a matter of fact, and had always known, that all pressing clubs used a limited quantity of gasoline; and that this knowledge on the part of the general agent who issued the policy constituted a waiver of the condi-

tion of the policy prohibiting the use or deposit of gasoline in the building.

On direct examination this agent testified very positively to this knowledge of the facts above stated at the time he issued the policy; but our attention is now called to the fact that, on cross-examination, he modified this statement to the extent of saying that his knowledge of the existence of the pressing shop in the building might have been acquired after the policy was issued, and that, as a matter of fact, he did not know whether the pressing shop was in the building at the time the policy was issued. The point is made that this testimony, when considered in connection with the testimony of other witnesses, that there was actually no pressing shop in the building when the policy was issued, shows that the general agent did not have, and could not have had, this knowledge when he issued the policy, as testified to by him on his direct examination.

Conceding the correctness of this contention of the appellant, we are still of the opinion that the affirmance of this cause was correct on another ground, not discussed in the former opinion, and that the suggestion of error must therefore be overruled. Conceiving at the time that the testimony of Mr. Roberts, the general agent who issued the policy, established a clear waiver of the provision in the policy against the use of gasoline in the building, we deemed it unnecessary to refer to or discuss the testimony as to the acts and knowledge of Mr. Miazza, an insurance adjuster, who was on the scene the second day after the fire, and who represented the appellant and all other companies participating in the loss in an effort to adjust with the appellee the amount of the loss and to secure a settlement thereof. ·

This adjuster appeared on the scene on Monday morning after the Saturday night on which the fire occurred, and secured authority to represent all of the companies having policies covering the burned building. He at

once began an investigation of the fire, and also made an effort to adjust with the appellee the amount of the loss. These negotiations continued for a period of about two weeks, during which time the appellee was encouraged to submit several estimates of the amount of the loss, which was done at considerable expense to him, and the adjuster likewise employed a contractor to prepare an estimate of the loss. The negotiations and controversy between this adjuster and the appellee continued from the 3d day of December to the 17th of December, at which time the adjuster required the appellee to sign a nonwaiver agreement; the controversy between these parties being principally, if not entirely, over whether the policies covered the loss of certain electric light fixtures and an awning attached to the building.

At no time prior to the execution of this nonwaiver agreement did this adjuster notify or suggest to the appellee that the insurer intended to rely upon a forfeiture created by a breach of the gasoline provision of the policy, or that liability for the loss would be denied on that or any other ground; but, on the contrary, he encouraged the insured to incur the expense and trouble of making proofs of loss and preparing estimates of the amount of the loss, and, if the proof shows that during that time this adjuster had notice or knowledge of the breach of this condition of the policy, his failure to notify the insured of the forfeiture will constitute a waiver thereof. *Mississippi Home Insurance Co.* v. *Dobbins,* 81 Miss. 623, 33 So. 506, and authorities there cited; *Fore* v. *U. S. Fire Insurance Co.,* 129 Miss. 497, 92 So. 628; *Mechanics' & Traders' Insurance Co.* v. *Smith,* 79 Miss. 143, 30 So. 362; *Whaley* v. *Guardian Fire Insurance Co.,* 124 S. C. 173, 117 S. E. 209; *Gunter* v. *Philadelphia Life Insurance Co.,* 130 S. C. 1, 125 S. E. 285.

Both the appellee and Mr. Roberts, the general agent of appellant, testified emphatically that they each discussed the cause of the fire with the adjuster on Monday

after the fire, and specifically called his attention to the fact that it was caused by gasoline in the building. This adjuster denied these conversations, but admits that at that time he discussed the origin of the fire with the appellee, and that he then believed the fire was caused from the gasoline kept in the building. On the question of his knowledge of this fact, the testimony of this witness is very evasive; but a careful reading of his entire testimony, and a consideration of his admission of facts tending to show such knowledge, as well as the numerous conflicts in his testimony, lead irresistibly to the conclusion that during the progress of these negotiations, and long prior to the execution of the non waiver agreement, he had knowledge of the cause and origin of the fire and the breach of the condition of the policy, and any other finding on this question of fact would not be warranted.

The former opinion is therefore modified only in so far as it holds that the testimony showed, without conflict, that the general agent who issued the policy had knowledge of the existence of a pressing shop and gasoline in the building at the time the policy was issued.

*Overruled.*