## W. W. REID ET AL. *v.* C. E. FREED.

### [56 South. 278.]

1. PARTNERSHIP. *Dissolution. Receiver. Accounting.*

> Where two partners, owning timber land and a sawmill, formed a partnership with a third party, who had no capital, but who was to operate the mill, share in the net profits, and account with the owners, and the third partner purchased timber without the consent of the others, operated a store without their consent and at a loss, caused the expenses to be largely in excess of the gross income from the mill, improperly used money furnished by his partners, failed to furnish proper accounts or pay rolls as a basis of settlement with the employees, and refused to deliver up the possession of the mill to his partners, and the two original partners filed a bill in chancery against the third partner praying the appointment of a receiver, the dissolution of the partnership and an accounting between the parties, *held*, that the partnership should have been dissolved and an accounting had and that a receiver was necessary to administer the business and settle the rights of the parties under the orders of the court.

2. SAME.

> Where in such case the report of the master appointed to take and state an account between the parties is obscure, confused, and so unintelligible that the court cannot pass upon it satisfactorily, the matter of accounting will be referred again for a proper report.

APPEAL from the chancery court of Sharkey county.

HON. J. S. HICKS, Chancellor.

Bill in Chancery by W. W. Reid et al. against C. E. Freed for a dissolution of a partnership, the appointment of a receiver and an accounting. From a decree for defendant, plaintiff appeals.

The facts are as follows:

Complainants, W. W. Reid and B. C. Welch, were partners owning a tract of timber land in Sharkey county,

Miss., upon which they were erecting a sawmill. They entered into an agreement with C. E. Freed that he should complete the mill, and they also entered into a written contract of copartnership with him, dated on the 26th day of January, 1905, which stipulated that he should operate the mill, and the net profits, after deduct ing the necessary expenses of operation, not to exceed ten dollars per thousand feet of lumber sawed, were to be divided; Freed to receive one-half, and Reid and Welch jointly to receive one-half. It was stipulated that Freed was to furnish to B. C. Welch, duplicate invoices of all expense bills, duplicated accounts of the amount of lumber inspected every two weeks, and that the money received for lumber sold should be remitted to Welch. It was further stipulated that Welch was to remit back to Freed the necessary expense of operating the mill, which was not to exceed ten dollars per thousand feet of lumber sawed, and seventy per cent. of Freed's one-half of the net profits, retaining the balance of thirty per cent, to be applied as payments to Reid and Welch of Freed's indebtedness to them; it having been stipulated that he should buy a one-half interest in the mill and pay for same out of his share of the profits, and that he should also be charged with several other items which were to be paid in the same manner. In August, 1905, Reid and Welch filed their bill in the chancery court of Sharkey county, praying the appointment of a receiver, that Freed be required to account, and for the dissolution of the partnership. A receiver was appointed by the court to take charge of the property on the 19th day of October, 1905. The defendant, Freed, answered the bill of complaint, making his answer a cross-bill, alleging various breaches of the contract by complainants, and praying damages. Upon final hearing the court entered a decree vacating the appointment of and discharging the receiver, dissolving the copartnership, that Freed was not liable to complainants under the contract of

copartnership, and granting Freed damages against the receiver's bond in .the sum of one thousand dollars attorney's fees, and allowing one thousand two hundred and fifty dollars to him for labor performed by him while in charge of the sawmill property, with six per cent. interest from the date of the appointment of the receiver to the date of the final decree, amounting to two hundred and eighty-seven dollars and fifty cents.

*J. J. McClellan,* for appellants.

I submit that the evidence in this record shows conclusively that appellants contracted with appellee, whereby appellants delivered to appellee the mill and timber in question: That appellee represented to appellants that said mill was almost complete and ready for work, and that it would only take a small amount of cash to make the plant self sustaining, that if appellants would put appellee in charge of said plant and furnish him a small amount of money, he would take the plant and make it self sustaining and would make lots of money for them.

That as soon as appellee was put in charge of the plant, he began to make demands on appellants for money, that appellants furnished appellee large sums of money and goods the equivalent of money as they were sold and converted into money. They furnished very much more than was necessary to make the business a success, if the money and other equivalents of money had been properly used by appellee. That they furnished large sums of money and property that appellee failed to account for but which was misappropriated by him. Under these facts the appellants were entitled to the relief asked in their bill.

The appointment of a receiver was proper. *Gillett* v. *Higgins,* 38 So. 664, 142 Ala. 167.

Where one partner misappropriates firm funds and refuses to account therefor, is ground for dissolution of

partnership. *Adams* v. *Shewalter,* 139 Ind. 178; 22 Am.
& Eng. Ency. Law, p. 110.

Breach of partnership articles sufficient ground for
dissolution of partnership. *Adams* v. *Johnson,* 32 N. H.
9; *Meher* v. *Cox,* 37 Ala. 201; 22 Am. & Eng. Ency. Law
(2d Ed.), p. 210.

The chancellor erred in sustaining the master's report,
and in overruling our exception to same; the chancellor
erred in not granting the relief asked; the case should
be reversed, and I confidently submit the same.

*Mayes & Longstreet,* for appellants.

Now as to the contract. On its face Freed was to be
the manager and obligated himself to render accounts
of expenses, etc.

Of course these obligations carried the obligation to
keep books, and keep the same properly. How else could
he render accounts which were proper accounts? *Funk*
v. *Leachman,* 4 Dana (Ky.), 24; *Richardson* v. *Pumphrey.*
2 La. Sun. 448; *Ryan* v. *Ryan,* 100 Va. 20; *Pierce* v. *Scott*
37 Ark. 308.

Now the master's report itself shows that these books
were badly kept; that entries were erroneous; that they
had to be corrected and the various entries had to be
passed to proper accounts, etc.

Counsel for appellee own up on the bad bookkeeping
and try to get out of the effect of it by saying that his
man was ignorant and did not keep the books, etc. It is
a novel proposition that a man who has taken for his
management thousands of dollars of another man's
money, has agreed to manage it and has agreed to render
accounts, can whistle his whole obligation down the wind
and justify himself in a court of equity, and not only
that but recover damages, simply on the ground that he
did not know how to do what he had undertaken to do.

Another point was that the receivership was properly
held to have been wrongfully taken because the evidence

failed to show that this man Freed was defrauded by
Welch & Reid.

The argument treated the matter as if it revolved
around that proposition alone.

Let the court read the bill and the amended bill. It
will see that the application for receiver was based on
various grounds; on purchase of timber without consent
of complainant, the object of the partnership being to
saw up complainant's timber; on continuous demands
for money, which were shown to have finally aggregated
seventy-four hundred fifty-two dollars and two cents;
on the improper use of the moneys furnished; on the fact
that his store was opened without complainant's con-
sent, and that money was lost there; on the fact that
Welch was not furnished by Freed with proper pay rolls
or other accounts, and that Freed can not furnish the
same.

Now note Freed's answer. He says, amongst other
things, that he "admits that he has not sufficient money
with which to run the plant," etc.; also, again, "admits
that at the time of the filing the original bill in this cause
he was in possession of said mill and equipment and
had no means of his own with which to operate the same,
and refuses to deliver the same to complainants that
they might operate it."

Now this receivership ought to have been sustained on
any one of the foregoing grounds. The failure to keep
books under the circumstances of this particular con-
tract, and we mean to keep proper books, was itself
ground for a receivership, and that is a matter which is
confessed.

An interesting case showing the broad principles on
which in this state a receiver will be appointed, is *New*
v. *Wright,* 44 Miss. 202; see *Vieth* v. *Ress,* 60 Neb. 52.

In connection with the alleged wrongfulness of the re-
ceivership, let this court note the admission of Freed in
his answer, that he did not have money with which to

run the concern; that he was in possession of the property; that he refused to turn it over to the Welchs in order that they might run it; and yet it was their property and he was not doing what he had contracted to do.

A more flagrant violation of the partnership articles would be hard to state short of one imposing a criminal liability.

The master's account is grossly incorrect.

Take, for instance, the merchandise account as it is shown on the ledger. This account is credited with twenty-nine hundred forty-nine dollars and eighty-three cents merchandise received. It is debted with thirty-seven hundred forty-one dollars and four cents merchandise sales, showing an apparent profit of the difference between those two sums; but the debt of thirty-seven hundred forty-one dollars and four cents includes twenty-one hundred eighteen dollars and fifty cents *in solido,* of sales brought from the old ledger, page 1. No credit is given to this account whatever for the receipt of the merchandise which must have been in hand, the sale of which produced that twenty-one hundred eighteen dollars and fifty cents.

*McLaurin, Armistead & Brien* and *W. H. Clements,* for appellee.

The mere desire of a copartner will not authorize a decree of dissolution without cause shown. *Bradley* v. *Harkner,* 26 Col. 76; *Hinn* v. *Walch,* 2 Edw. (N. Y.) 129; *Gerard* v. *Gatean,* 25 Am. Rep. 438.

The most that can be said of Freed, for the sake of argument conceding it to be true, is that probably he may have made mistakes, sometimes using bad judgment, and to put it even stronger than that and say that he was guilty of misconduct. "The mere fact that a copartner has been guilty of misconduct and mismanagement will not, it is held, constitute cause for such rescission of the contract, in the absence of fraud by such co-

partner at the time of making the partnership agreement. 23 Am. & Eng. Ency. Law, p. 207; *Halliston* v. *Simonson,* 36 N. Y. (App. Div.) 63.

Welch cannot allege fraud in the making of the contract because he proposed the terms and drafted the instrument. A dissolution will not be granted upon the grounds of misconduct at the instance of the party guilty of the misconduct in question unless there are other causes justifying it and it will be for the benefit of the partners themselves. See 23 Am. &Eng. Ency. Law, p. 211.

Certainly a dissolution of a partnership created for the purpose of this contract by and between parties circumstanced as these people were could not redound to the good of the partnership. The only benefit to be derived from a business of this character being to operate the plant and to put the lumber upon the market. A dissolution being the most far-reaching remedy between the parties a court of equity will not force the partnership into dissolution if such can be done without resorting to this extreme measure. 23 Am. & Eng. Ency. Law, p. 208.

The chancellor, however, in this instance saw fit to dissolve this partnership and award Freed a flat sum for his services by an award of damages for the wrongful breach of the partnership agreement by complaints. See *Jefferson Sawmill Co., Ltd.* v. *Iowa & La. Land Co., Ltd.,* 48 So. Rep. 428.

It was held in this case that the court had a right in awarding the damages to fix it in a lump sum instead of specifying the measure as the value for the manufactured product less the cost of the manufacturing. This now brings us to the point as to the right of complainants to an accounting under this contract.

A partner cannot maintain an act for an accounting under an agreement of partnership which he has never complied with and which has never gone into effect. *Davis*

v. *Key,* 123 U. S. Rep. 79; (see 31 Law Ed., p. 112), and
that is exactly the attitude of complainants in this case.
They have never complied with the articles of partner-
ship and having breached the agreement are endeavor-
ing now to take advantage of their own wrong and dis-
solve this partnership before the period of existence had
expired and have a court of equity make an accounting
of the entire business of the partnership when the part-
ner against whom this bill was filed has been guilty of
no wrong such as would entitle them to an accounting
and a dissolution.

WHITFIELD, C.

With respect to the discharge of the receiver, we are
of the opinion that the court erred in discharging the re-
ceiver. The testimony rather makes the impression upon
us, taken as a whole, looking to the entire correspond-
ence, that Welch was not inveigling Freed into the con-
tract set out in the record, but that the contract was
sought by Freed himself. It would rather seem that
Freed was depreciating Peterson, and trying to get
Welch to take him in Peterson's place, and this was the
result accomplished. It is further clear, from the evi-
dence, that Freed put no money into the venture, and
that, after the lapse of about five months only, Welch
had furnished a gross amount of over eight thousand
dollars, subject to certain credits which would reduce
the amount to something like five thousand dollars.

The grounds on which the receiver was applied for
are many. For example: That timber had been pur-
chased by Freed without the consent of the appellants;
that Freed made continuous demands for money, which
finally aggregated, as stated, over eight thousand dollars;
that the expenses were largely in excess of the gross
income from the mill; that moneys furnished had
been improperly used by Freed; that the store oper-
ated by Freed had been operated without the con-

sent of appellants, and at a loss; that Freed did not furnish Welch proper pay rolls on the basis of which to settle with the hands; and that Freed himself had no money with which to pay off the hands or run the business. Now Freed, in his answer, expressly admits that he had not sufficient money for these purposes, and that he was in possession of the mill and its equipment at the time of the filing of the original bill; and yet he refused to deliver the possession of the property to complainants, appellants here, that they might operate it. Furthermore, although this record, so far as the bookkeeper is concerned, is a jumble of confusion, it nevertheless does appear, with sufficient clearness, we think, that the books, as kept by Freed, were not kept in any proper manner. It is shown that Freed was taking goods out of the mercantile establishment and using them himself, without, as alleged, properly accounting for them, and that he failed to pay hands their wages, and that dissatisfaction thereby was created and the safety of the business was imperiled. It is also worthy of note, in this connection, that in the final decree, which set aside the receivership, there is no order whatever directing what disposition should be made of the property in possession of the receiver. It was not directed to be restored to the possession of Freed, and we think it was highly proper that no such order was made, in view of the condition of the affairs of the partnership at the time of the decree, and the manifest impossibility of these partners, the appellants and the appellees, continuing in harmonious and successful operation of the business. On the whole case, so far as the receivership is concerned, we think the court erred in setting aside the receivership, and that a receiver was necessary to administer this business and settle the rights of the parties under the orders of the court.

Turning, now, to the matter of accounting: We have rarely seen the report of any master involved in as much

obscurity and confusion. It would seem that crediting Freed with one hundred nine dollars and ten cents, instead of deducting that sum from the amount of his individual account of two hundred seventy-nine and eighty-three cents, which would have left Freed indebted to appellants to the extent of one hundred and seventy dollars and seventy-three cents, was an erroneous credit; and it would further seem that crediting Freed with eight hundred and twenty-one dollars and thirty-four cents is also erroneous. It would further seem that the credit given Freed on the commissary stock turned over to the receiver, of one hundred and fifteen dollars, should not have been allowed, since he had already been credited with the same in the merchandise account. It would appear to be a double credit. It is difficult, also, to understand how Freed could have been credited with twelve hundred and fifty dollars for his services, when, as we understand it, Freed was to contribute those services to the partnership, as against the capital put in by the appellants. We have used the expression, in respect to all the items we have noticed, "it would seem," and we have done this purposely, because it is impossible for us, on this unprecedently confused and jumbled accounting, to say with any certainty what part of the master's report is correct and what part is incorrect. We prefer, without holding that these items which we have discussed were improperly allowed, to reverse the decree of the chancellor altogether on the accounting, and remand the cause, with instructions to have a competent master employed, and to have stated clearly and intelligently the state of the accounting, so that an inspection of it will enable the chancellor and this court, if it should become necessary for this court again to deal with the case, to pass upon it satisfactorily. When an accounting is ordered by a chancellor, he has the amplest power to refer it to a proper master, to take and state the account, etc.—the amplest power to authorize that master to employ all proper expert

accountants, and to take evidence with respect to the items of the account; and the chancellor should see to it, diligently, that the account as finally made and presented to him should be free from confusion, and, where facts are found by the master, the findings and the reasons for the findings, if necessary, set out clearly and fully, so that on the face of the report there shall be clearness, and not confusion. The accounting in this case is one that it is impossible to understand on the record as now presented; one that is not intelligent; one on which the mind of this court cannot rest, with any satisfaction as to what items ought or ought not to have been allowed to the one side or the other.

We are clear that this partnership should stand dissolved, and that far the action of the chancellor was correct. But he should have retained the receiver and referred the accounting again for a proper statement and an intelligible report by the master.

*Reversed and remanded.*

Per Curiam. The above opinion is adopted as the opinion of the court, and for the reasons therein set out the decree setting aside the receiver is reversed, and the receiver is retained for the further administration of the matters involved under the direction of the court; and the decree is further reversed entirely as to the whole matter of accounting, and the chancellor directed to refer all the matters of accounting to a competent master, to restate the account and report thereon. The decree awarding damages in the sum of twenty-two hundred and sixty-seven dollars and sixty-seven cents is reversed and set aside, since this matter of damages, attorney's fees, etc., must wait a proper accounting.