INTERSTATE LIFE & ACCIDENT INS. CO. v. RUBLE.

(Division B.   April 6, 1931.)

[133 So. 223.   No. 29280.]

Gardner, Brown & Backstrom, of Gulfport, for appellant.

**Jno. A. Sykes,** of Gulfport, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellee sued the appellant for the face value of a policy issued upon his minor son. It appears that the policy was issued under the following circumstances: One Mr. Knight was agent of the Interstate Life & Accident Insurance Company and was boarding with the appellee. He fell behind with his board, and, being financially embarrassed, asked Mr. Ruble about taking some insurance upon his wife and children and applying the amount which he owed to the payment of the premiums. There was an agreement that such policies would be issued on the wife and children, the children being two boys. Mr. J. L. Muskelly was state agent or manager for the district composing the state of Mississippi, and had general powers to receive and receipt for premiums and to deliver policies. He came to the boarding house of appellee, and, according to the testimony of appellee, Knight, Ruble, and Muskelly went into a room and discussed the matter of paying the premiums from the amount owed Ruble by Knight. Knight asked Mr. Muskelly if he would agree to credit Ruble with the amount Knight owed him and pay the premiums upon the policies, and charge him (Knight) on the books of the company with this debt; this Muskelly agreed to do, according to Ruble's testimony, and the first annual premium on the two policies on the life of the sons of Ruble was actually paid by Muskelly to the company at its home office.

According to the plaintiff's testimony after this agreement was entered into and the policies delivered and the first year's premium had expired, he received a notice that the second annual premium was due, but ignored it, stating that he was depending upon the agreement with Mr. Muskelly and upon him attending to it. The notice seems to have been sent from the home office at Chattanooga, as it was customary to send out the notice of premiums from the home office, but upon such notice it

was stipulated that the premium could be paid to Muskelly, and Muskelly frequently did receive the premiums and receipt for them. Subsequent to the giving of this second annual notice, a notice of cancellation was sent from the home office to Mr. Ruble, and this was likewise ignored. According to the proof the annual premiums upon the two policies on the sons amounted to thirty-eight dollars and some cents. The policy on the life of the wife was never issued, as she did not stand the required medical examination and was rejected. The amount owed by Knight to Ruble was ninety-nine dollars and some cents, which plaintiff's testimony shows was the amount that Muskelly agreed to charge to Knight on the books of the company and credit to the account of Ruble on the premiums. Subsequent to this agreement and the issuance of the policies, Knight and his wife and children continued to board with Ruble, and, according to the plaintiff's testimony, became indebted to him and owed him additional board bill. Likewise other agents soliciting insurance for the appellant boarded with Ruble and failed to pay a part of the bills made for board. After the second premium was due and after the notice, above mentioned, of cancellation of the policies, one of the sons of the appellant was injured by an automobile and died from the injuries; demand was made for the amount of the policy and was refused.

Mr. Muskelly, the state agent, testified that he was the district agent, the district at the time being composed of the state of Mississippi, and that he had authority to deliver policies and collect premiums and account for the company in this state in that regard, and had under him certain assistants and agents soliciting insurance in the state on behalf of the company. He testified to agreeing to pay the premiums on the policies and charge the account to Knight on the books of the company at Jackson, but denied that the agreement covered anything except the first annual premiums on the policies, which

premiums he paid to the home office and charged Knight, but that Knight had never paid them. Subsequent to these happenings Knight ceased to be an employee of the company.

It is contended by the appellant that the agreement testified to by Ruble, the plaintiff, conceding it to be true, does not bind the company, and that the policies had lapsed and no liability existed thereunder at the time of the death of the son of the plaintiff. The court below submitted the question to the jury as to whether or not Muskelly was the general agent of the company in the state, and the jury found for the plaintiff, finding, in effect, that he was such general state agent.

It is argued that the act of Muskelly in making the agreement was beyond the scope of his powers as agent, and that the effect of section 5196, Code of 1930, is not to broaden the authority of the general agent or manager in the state in that regard; that premiums can only be paid in money, and that an agent cannot make an agreement to receive anything other than money in payment of the premiums so as to bind the company. The decisions of this court have made an agent the alter ego of the company within the scope of his authority. Under the statute an agent within the field of his employment and agency becomes the general agent of the company as to the things he is employed to do. Hartford Fire Insurance Co. v. Clark, 154 Miss. 418, 122 So. 551; Lamar Life Insurance Co. v. Kemp, 154 Miss. 890, 124 So. 62; New York Life Insurance Co. v. Smith, 129 Miss. 544, 91 So. 456; Agricultural Insurance Co. v. Anderson, 120 Miss. 278, 82 So. 146; Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653.

As an insurance company to build up and extend its business must employ agents to represent it, and can only act through agents, we see no reason why the company could not enter into a contract to finance its agents and to make agreements to pay their expenses or to assume indebtedness by their agents when it thought proper to

do so to keep the agent in the service and continue in the effort to build up its business. We think the consideration, accepting the plaintiff's version of the transaction, was sufficient to bind the company. The company, in effect, agreed to pay Knight's debt to Ruble in consideration of Ruble taking out insurance with the company and limiting the amount to be paid to Ruble for Knight's debt to the premiums upon such policies as were issued to Ruble. A transaction of this kind does not violate the statute of frauds and is predicated upon a sufficient consideration to bind the company. It is well known that insurance or other corporations must have agents to promote and stimulate and develop their business. A large part of the profit of the insurance business is upon the payment of subsequent premiums from that first paid in soliciting the policy. There is necessarily more expense attached to securing the first premium and procuring the insurance than there is involved in keeping up a policy after it is once issued. Ordinarily the insured or beneficiary continues to pay the premium merely upon notice, no personal visitation or solicitation being required. In order to secure business upon which there would be continual annual payments of premiums the company might agree, in order to keep their agent in good standing, to pay his expense accounts. There is nothing in public policy that would prohibit the doing so. The organizing of a new business or the extending of an old one into new territory may require an expenditure of more money than the receipt in the first premiums there amount to. The company has a right to take such risk and to make such contracts as it deems proper as a business proposition so to do.

The insurance company, having made Muskelly its agent for the district composing the state of Mississippi, and giving him power to deliver policies and accept premiums in this state, made him an agent within the meaning of the statute above cited and Muskelly's agreement in

reference to the said matter is as effective and binding as if made by the home officers of the company.

We find no reversible error, and the judgment will be affirmed.

Affirmed.