TRAVELERS' FIRE INS. CO. *v.* PRICE.

(En Banc. Feb. 26, 1934.)

[152 So. 889. No. 30862.]

Green, Green & Jackson, of Jackson, for appellant.

Howie & Howie, of Jackson, for appellee.

Argued orally by **Forrest B. Jackson**, for appellant, and by **W. B. Fontaine**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee brought this action against appellant on an automobile insurance policy issued by appellant to appellee on the 4th day of October, 1932, insuring appellee against loss of her Chevrolet automobile by theft or fire, alleging that while the policy was in force the automobile was stolen and afterwards destroyed by fire. Appellant defended upon two grounds, namely: That ap-

pellee had violated the sole and unconditional ownership clause of the policy, also the clause providing against the use of the car as a public conveyance for hire. The court directed a verdict for appellee. Judgment was entered accordingly, from which appellant appeals.

Appellee's reply to those defenses was that those clauses of the policy had been waived by the appellant.

The policy contained the usual sole and unconditional ownership clause. It provided, among other things, that if appellee's interest in the automobile should "be or become other than unconditional and sole lawful ownership . . . or in case of transfer or termination of the interest of the assured other than by death of the assured, or in case of any change in the nature of the insurable interest of the assured in the property described herein, either by sale or otherwise," the policy should be void, unless provided by agreement, in writing, attached thereto; and also if the automobile should be "used as a public or livery conveyance for carrying passengers for compensation," the policy should become void, unless otherwise provided by agreement, in writing, attached thereto. The policy concluded with this paragraph: "This policy is made and accepted subject to the provisions, exclusions, conditions and declarations set forth herein or endorsed hereon, and upon acceptance of this policy the assured agrees that its terms embody all agreements then existing between himself and this company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of this company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached. This policy shall be void in event of violation by the assured of any agreement, condition or declaration contained herein or in any rider now or hereafter attached hereto."

The insurance was effected through J. H. Johnson & Co., Inc., an insurance agency representing appellant and other insurance companies. This agency had in its employ Dwight Taylor, whose authority was confined to soliciting insurance and collecting premiums; he had no authority to issue policies of insurance, nor add to or in any manner modify policies issued by his principal. He was solely a soliciting and collecting agent. Taylor solicited and procured the application for the policy here involved. The policy, however, was issued and delivered, not by Taylor, but by his principal, J. H. Johnson & Co., Inc. The annual premium provided in the policy was eleven dollars and fifty cents; none of it was paid. The policy was delivered and went into effect without its payment. The policy was dated and took effect October 4, 1932. At the time the policy was delivered, appellee was the sole and unconditional owner of the automobile, and it was used alone for family and business purposes. Later, however, appellee's husband, with her consent, made a conditional sale and transfer of the automobile to the Central Cab Company. Thereafter the automobile was driven by appellee's husband and used by the Central Cab Company as a public conveyance for hire. While it was being so used, Taylor, the soliciting and collecting agent, approached appellee's husband to collect the premium, which was still unpaid. Taylor was informed by appellee's husband of the transfer of the automobile to the Central Cab Company and of the fact that it was being used as a public conveyance for hire, and asked Taylor if those facts would void the policy. Taylor replied that they would not. Thereupon appellee's husband paid Taylor four dollars on the premium, leaving a balance due of seven dollars and fifty cents, which he agreed to pay later. Three or four days after this payment, and on the 23rd of November, 1932, the automobile was stolen, and a few days later was found damaged by fire to the extent of two hundred sixty dollars.

Appellee and her husband both admitted in their testimony that they had read the policy time and again and were familiar with its terms, but that they acted on Taylor's assumed authority to waive its provisions.

Barksdale, the manager of J. H. Johnson & Co., Inc., testified, and his evidence is undisputed, that Taylor had no authority to modify or waive any of the provisions of the policy, and that this company not only had not ratified any pretended waiver or change in the policy by Taylor, but had no knowledge thereof. The waiver by Taylor was not indorsed on the policy in writing. Taylor did not testify. There is nothing in the record to show what became of the four dollars collected by Taylor on the premium.

It will be observed from the above statement of the case that all the facts relied on as constituting a waiver occurred after the policy had been in effect at least a month and a half.

If section 5196, Code of 1930, has no application, and we are of opinion that it has none, the question involved is controlled by the principles of common law. The statute is in this language: "Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance, or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect or transmit any premium of insurance, or making or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance, for or with any such insurance company other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance, or request, or by the employment of the insurance company, or of, or by any broker or

other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract; such person knowingly procuring by fraudulent representations, payment, or the obligation for the payment, of a premium of insurance, shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or be imprisoned for not more than one year.''

So far as the statute goes it is in derogation of the common law. It must not be extended beyond its intent and terms. We think it manifest that it applies alone to what takes place before and up to and including the consummation of the insurance, and after its consummation what takes place in the examination and adjustment of the loss. The phrase ''or do or perform any other act or thing in the making or consummation of any contract of insurance'' limits and qualifies what goes before it, and the language further on down, ''or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company,'' has reference alone, of course, to the adjustment of the loss. As to all other matters and things, the principles of the common law govern. This construction of the statute reconciles what otherwise appears to be a conflict in some of the decisions of our court. Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653; Mutual Life Ins. Co. v. Vaughan, 125 Miss. 369, 88 So. 11; New York Life Ins. Co. v. Smith, 129 Miss. 544, 91 So. 456; Hartford Fire Ins. Co. v. Clark, 154 Miss. 418, 122 So. 551; Lamar Life Ins. Co. v. Kemp, 154 Miss. 890, 124 So. 62; Interstate Life & Accident Ins. Co. v. Ruble, 160 Miss. 206, 133 So. 223; American Bankers' Ins. Co. v. Lee, 161 Miss. 85, 134 So. 836; St. Paul Fire & Marine Ins. Co. v. Loving, 163 Miss. 114, 140 So. 727; and Home Ins. Co. of New York v. Thornhill, 165 Miss. 787, 144 So. 861, are all cases in which the insurance companies

sought to void the policies on account of what occurred before and during the consummation of the insurance contracts. There is no decision, so far as we are able to ascertain, applying the statute to what took place after the contract was consummated and became effective.

The statute being out of the way in this case, as stated, the governing principles are those of the common law. It should be borne in mind that the waiver claimed in this case was not through any act or conduct on the part of appellant's general agency, J. H. Johnson & Co., Inc., but through a mere soliciting and collecting agent employed by the latter. The applicable principles of the common law were very fully discussed and laid down in New York Life Ins. Co. v. O'Dom, 100 Miss. 219, 56 So. 379, Ann. Cas. 1914A, 583. It was held in that case that such an agent was without power to modify the contract of insurance or waive any of its conditions; that a stipulation in the contract that the agent was without power to do so was binding on the insured; and that the insured was affected with notice of such stipulation, whether he actually knew it or not. (As stated, appellee had read and knew the contents of her policy.) The principles laid down in that case were recently reaffirmed in the cases of Interstate Life & Accident Ins. Co. v. Mrs. Cora Pannell (Miss.), 152 So. 635; Mutual Life Ins. Co. v. Hebron, 166 Miss. 145, 146 So. 445; and Stonewall Life Ins. Co. v. Cooke, 165 Miss. 619, 144 So. 217, all of which were cases where what was claimed as a waiver took place after the consummation of the insurance.

Appellee either knew or should have known—she was affected with notice—of the sole and unconditional ownership and the public conveyance for hire clauses in her policy, and that the soliciting and collecting agent had no right, under the plain language of the policy, to waive those clauses, and that such a waiver amounted to nothing, would not be binding on appellant. Appellant, therefore, had the right to stand on those clauses. The result is appellant was entitled to a directed verdict.

Reversed and judgment here for appellant.

**Smith, C. J.**, delivered a concurring opinion.

I concur in the result here reached, but do not think it necessary to invoke or construe section 5196, Code 1930, for, if it be assumed, as the opinion in chief does, that Taylor was the appellant's agent for soliciting insurance and collecting premiums on policies, the appellee has obtained all the benefit which the statute, if applicable, confers on her. The effect of the statute is to simply make the person who does any of the things therein set forth the agent of the insurance company for the particular thing done, and relieves the insured of proving the agency. It does not make the one who does the things therein enumerated the general agent of the company for which the particular things were done, or, in any way, enlarge the common-law powers of the agent, except to relieve him of certain restrictions therein contained in the policy in the execution of which he participates. American Bankers' Insurance Co. v. Lee, 161 Miss. 85, 134 So. 836; Home Ins. Co. v. Thornhill, 165 Miss. 787, 144 So. 861.

Assuming then, as the appellee claims, that Taylor was, in fact, the appellant's duly appointed agent to solicit insurance and collect premiums thereon, his authority, as a mere soliciting agent, would not include authority to waive a condition in a policy after its execution; nor would such authority be included in his authority to collect premiums on policies, both of these questions being governed by the common law of agency.

**Ethridge, J.**, delivered a dissenting opinion.

I am unable to agree with the construction placed upon section 5196, Code of 1930, and think the majority decision is contrary both to the logical interpretation of the statute, and to the decisions of this court dealing with this section. There are, of course, conflicts in the decisions upon the questions involved, but they grow out of cases in which the statute was not considered, being referred to neither in briefs of counsel nor in the

court's opinions. Consequently, these cases should not be considered authority for the construction thereof.

Before going into a discussion of the statute and the decisions, I desire to call attention to the terms of the policy in the present case which, in my opinion, have the effect of recognizing section 5196, Code of 1930, and consenting to the substitution of its provisions for the policy provisions, where they are in conflict. The policy provides as follows: ''Any and all provisions of this policy which are in conflict with the statutes of the state wherein this policy is issued are understood, declared and acknowledged by this company to be amended to conform to such statutes. This policy is made and accepted subject to the provisions, exclusions, conditions and declarations set forth herein or endorsed hereon, and upon acceptance of this policy the assured agrees that its terms embody all agreements then existing between himself and this company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of this company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached. The policy shall be void in event of violation by the assured of any agreement, condition or declaration contained herein or in any rider now or hereafter attached hereto.''

The latter part of this quoted provision is written out of the policy by the first part thereof, taken in connection with section 5196, Code 1930, which provides in express terms that: ''Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance, or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall

examine or inspect any risk, *or receive, collect or transmit any premium of insurance,"* etc.

The doing of the thing named in the statute makes the person doing it the agent of the company if the company has authorized him to do the act; or if, not having authorized him to do so, it accepts the benefits of his act. The words of the statute, "or do or perform any other act or thing in the making or consummation of any contract of insurance, for or with any such insurance company, other than for himself," are not intended to modify and limit the first part of the statute. The doing of the particular things enumerated, by the agent, makes him a general agent of the company for the purpose of his agency, and everything that comes to him in the course of the doing of that act, or rendering of that service is notice to the company. But the statute was broader than the named things, and is intended to embrace any other act on the part of such person in the making or consummation of a contract of insurance. Not only did the lawmakers intend to make the agent who did the enumerated things the alter ego of the company, within the purview of the act done, but also to embrace every other thing that might be done in consummation of contracts of insurance. The phrase was to follow any other act, and, of course, was not to make any act whatever that an agent might do an act of the company, but all acts not named which were done in the consummation or making of a contract. The construction now placed on the statute emasculates it of a good portion of its intended purpose. Under the construction of the majority opinion, if the contract of insurance is delivered, then, although the premium is collected by an agent of the company, the latter is not bound by notice that comes to the agent, and may limit his authority to mere receipt of premiums, and thus avoid all waiver or estoppel by reason of facts learned by the agent, and which, in this case, he represented would not affect the validity of the insurance. In other words, it

enables the insurance company to reach out and take the premium through the agent representing it in performing the functions of his business, while escaping all responsibility that would accrue to it because of facts known to the agent, which would, on the proper construction of the statute, make a waiver or estoppel against the company.

If the policy is executed, say, for a term of five years, and delivered, and the payments are to be made annually, the agent who collects the premiums can misrepresent its terms and deceive the assured without limit, collecting premiums which would otherwise not be collected, and the company would not be bound. This would certainly be hurtful to the property owner, and is clearly contrary to the express provisions of the statute.

The purpose of the enactment of section 5196 of the Code, and of other sections pari materia, was to prevent insurance companies from doing business in the state in such manner as to deceive or injure the public, and to reap the profits, while escaping liability through the expedient of limiting the authority of the agent. Wherever a company appoints an agent for a particular purpose, that agent, acting for the company, is to be treated as though the company itself were acting, as this court has often decided.

In Cain v. State, 103 Miss. 701, 60 So. 731, 732, it was held by the court that, the object of sections 1248, 2615, and 2616, Code of 1906, "was to keep wild-cat companies, or companies not complying with the law, from doing business in the state; and, to that end, all persons acting as intermediaries for such companies, whether directly or through circuitous routes, were made liable to fine and imprisonment." In other words, it was made a crime for any person to receive or transmit any application for a premium, or to deliver a policy, other than for himself. It was also held: "That one who transmitted an application for insurance, received the policy, delivered it to assured, and collected a premium and

transmitted it to a broker, was an agent within the statute, so as to make him punishable under section 1248, though he was not authorized by the company to solicit policies."

This case deals in part with the purposes of the statute, which intends to place on the company responsibility and liability for acts of the agent in performing functions authorized by the company, and to subject the insurance company in such case to all the burdens and obligations that would be imposed upon it were the general officers of the company, or the company itself, doing the act. It does not permit limiting the power of an agent within the scope of his appointment, so as to avoid consequences, amounting to waiver or estoppel. It was manifestly intended to make the company bear burdens, as well as take benefits. The old expedient of appointing an agent, and forbidding him to bind the company, was done away with by this statute. The latter part of the provision quoted in the first part of this opinion is 'n practical effect the same as that dealt with in Fraternal Aid Union v. Whitehead, 125 Miss. 153, 87 So. 453, 454, and London Guarantee & Acc. Co. v. Miss. Cent. R. Co., 97 Miss. 165, 52 So. 787. .In that case the agent taking the application for insurance wrote for the applicant the answers to the questions propounded by him. Although true answers were given, the agent failed to write them down, deeming them unimportant. The provision was in the policy, within the by-laws, that no agent or officer of the company should waive any provision, unless the waiver was written upon the application or in the policy; the by-laws in that case reading: "No officer or member of the supreme lodge, except the supreme president by dispensation, nor any local or subordinate lodge or any officers or member thereof or any organizer, deputy or agent, shall have authority to change, alter, modify or waive any of the provisions of this Constitution." We said: "The law of waiver and of estoppel does not depend upon contract. The waiver may be

made by conduct and action as well as by words, and no contract can repeal the law upon this proposition. Estoppel is predicated upon the doing of a thing by a party which causes another person to act or change his situation by reason of such act of the other party as would make it inequitable or unjust to permit the party to assert to the contrary. There must at all times be some person who can represent the appellant in such way as to create an estoppel or to create a waiver, and the provisions of the appellant's constitution above set out do not provide or leave room for this rule to operate. We do not feel that we have any authority to eliminate a portion of the said section so as to make it stand. It must stand or fall upon its validity as written. This court has had occasion to pass upon this proposition before, and it has held that a company cannot eliminate the law so as to escape the consequences of its act that would result in waiver or estoppel if the company was an individual.''

In the same case, at page 176 of 125 Miss., 87 So. 453, 458, we said: ''This case must be treated in our opinion just as though the applicant for the certificate was dealing personally with the president and the president had performed the acts that the state manager performed. Certainly an insurance company could not be deemed to desire information as to insignificant and slight ailments which had existed a long time prior to the application.''

In St. Paul Fire & Marine Ins. Co. v. Loving, 163 Miss. 114, 140 So. 727, it was held that an insurance agent who inspects risks, issues and delivers policies, and collects premiums, is the general agent of the insurer, and therefore his knowledge is the knowledge of the insurer; citing section 5196, Code of 1930. In the opinion, at page 119 of 163 Miss., 140 So. 727, 728, it was said: ''It will be observed that the statute provides, among other things, that if any insurance agent shall receive or deliver a policy of insurance for his principal, or shall

examine or inspect any risk, or receive, collect, or transmit any premium of insurance, he shall be held to be the agent of his principal 'for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract.' Where an agent of an insurance company inspects a risk, issues and delivers the policy of insurance for his principal and collects the premium due upon the policy, he is the general agent of the company, and his knowledge is the knowledge of his principal. In other words, what he does his principal does. Big Creek Drug Co. v. Stuyvesant Ins. Co., 115 Miss. 333, 75 So. 768; Agricultural Ins. Co. v. Anderson, 120 Miss. 278, 82 So. 146; Lamar Life Ins. Co. v. Kemp, 154 Miss. 890, 124 So. 62; Hartford Fire Ins. Co. v. Clark, 154 Miss. 418, 122 So. 551; Interstate Life & Acc. Ins. Co. v. Ruble, 160 Miss. 206, 133 So. 223.''

In Interstate Life & Accident Insurance Co. v. Ruble, supra, it was held that: ''Under section 5196, Code of 1930, a general agent of an insurance company authorized to accept premiums and deliver policies on behalf of the company may make an agreement binding upon the company in consideration of writing of insurance to pay a debt owed by an agent of the company for board during the existence of the agency.''

It was also held that ''section 5196, Code of 1930, is broader in its scope than the general law of principal and agent and makes the act of the agent within the line of his powers the act of the company.''

In Hartford Fire Ins. Co. v. Clark, 154 Miss. 418, 122 So. 551, the case was considered by the court in banc, and it was there held: ''An insurance company is bound by knowledge of, or notice to, its agent within general scope of his authority, notwithstanding a contrary provision in application or policy.'' It is there held, further, that ''knowledge acquired by a soliciting agent in the course of his employment of soliciting insurance, pre-

paring and transmitting-applications, delivering policies, etc., is ordinarily imputed to insurance company.''

It is difficult to see how the holding of this case can be followed, and how the majority opinion in the present case has been reached. It is true that another judge and I dissented in that case, thinking that the provisions of the policy, which limited to the insurance company at its home office the right to pass on risks, could be upheld under the statute, but the court held otherwise; and of course this holding becomes law to all the judges of this court.

In Lamar Life Insurance Co. v. Kemp, supra, it was held that under the above section of the Code the act of an insurance agent in delivering the life insurance policy without collecting the first premium was the act of the insurer, notwithstanding the provisions in the application for insurance and in the policy to the contrary. In the opinion in this case, at page 895 of 154 Miss., 124 So. 62, 63, Judge ANDERSON, speaking for the court, said: ''Appellant contends that, if its soliciting agent delivered the policy to the insured without collecting the first premium, such delivery was made without appellant's authority, and in violation of the terms of both the application for insurance and of the policy. The application recited that appellant's soliciting agent had no authority to deliver the policy without payment of the first premium, and the policy provided that, if the first premium was not paid, the policy should be of no effect. Under section 2615, Code 1906 (Hemingway's Code 1927, sec. 5873), the act of appellant's soliciting agent in delivering the policy without collecting the first premium, was the act of appellant, notwithstanding any provision in the application for the insurance and the policy to the contrary. Mutual Life Ins. Co. of N. Y. v. Vaughan, 125 Miss. 369, 88 So. 11; Hartford Fire Ins. Co. v. Clark, 154 Miss. 418, 122 So. 551.''

In Miss. Fire Ass'n v. Stein, 88 Miss. 499, 41 So. 66, the appellee, about to leave the state for a while, made

request of the agent of the company for a thirty-day vacancy permit, directing the agent, who had access to his policy, to attach the same thereto. This the agent promised to do, but through inadvertence failed to comply with the request. The house was destroyed by fire within the thirty-day period. The fire association refused to pay the loss, and this suit was filed. It was held that where an agent had authority to issue free vacancy permits, as in this instance, upon verbal request from the insured, and was in the habit of doing so, the company cannot escape liability for the loss. It was held that the policy was entitled to be reformed, and as reformed enforced.

In Franklin Fire Ins. Co. v. Franks, 145 Miss. 494, 111 So. 135, it was held that though by a provision of the fire policy the agreement that it should cover the insured goods at any new location to which they might be moved was required to be indorsed on the policy, the insurer was estopped to claim that the policy did not cover them at the new location, where its agent, with authority to act in the premises, agreed to make the indorsement, and the insured acted and relied on such agreement, which was not kept.

In Fidelity & Casualty Co. v. Cross, 131 Miss. 632, 95 So. 631, it was held that: "Where an applicant for insurance fully disclosed to the agent of an insurance company the facts in regard to a prior illness suffered by him, and from which he had apparently fully recovered, and the agent advised him that the fact of such illness was not material, and the agent, with full knowledge of all the facts, took charge of the preparation of the application for insurance, and the applicant did not sign such application and had no knowledge of the fact that it had been prepared until the policy was delivered, the insurance company cannot avoid liability on the policy on the ground that the application failed to disclose material information, although the insured accepted the policy with this unsigned application attached

thereto as a part thereof.'' That, ''If an agent of an insurance company undertakes the preparation of an application for insurance in his company, and suggests or advises what facts are material to the risk, or what questions shall be answered, or what will be a sufficient answer, and, by mistake or omission, fails to record material facts within his knowledge, the company cannot avoid liability on the policy on the ground that the application failed to disclose material information, if the applicant has acted in good faith throughout and has fully disclosed the facts to the agent.''

In Fidelity-Phenix Fire Ins. Co. v. Redmond, 144 Miss. 749, 111 So. 366, it was held that a ''condition of policy prohibiting the keeping or use of gasoline on premises was waived by general agent of company issuing policy with knowledge of use of gasoline in a business conducted in the building, and at a premium in accordance with the risk from such use.''

It was also held in this case, on a suggestion of error, that where the insurance adjuster, with knowledge of the condition in the face of the policy, and of the use of gasoline on the premises, without suggesting forfeiture of the policy, entered into negotiations with the insured in an effort to adjust the loss, encouraging him to submit estimates, at considerable cost, there was a waiver of the forfeiture.

In Caledonia Fire Ins. Co. v. Shepherd, 111 Miss. 175, 71 So. 314, it was held that where the agent of a fire insurance company, at the time he consented to additional insurance, has not complied with section 2627 of the Code of 1906, requiring every agent to obtain a certificate showing that he is the duly authorized agent, this fact cannot be availed of by the company to avoid its liability under the policy.

In Scottish Union, etc., Co. v. Wylie, 110 Miss. 681, 70 So. 835, the duly authorized agent of a fire insurance company informed the owner of property, before it burned, that his policy had expired, whereupon the latter

asked the agent to issue a policy on the same property. The agent assured him that he could consider the insurance in effect from that minute. The policy was written, but was not delivered, nor was the premium thereon paid until after the fire. At the time the policy was issued there was a chattel mortgage on the property, and also another insurance policy thereon, concerning which no questions were asked or answered. In this case it was held that the agent, failing to inform himself in this regard, waived the benefit of the noninsurance and nonmortgage clauses in the policy, and the insurance company, being bound by the act of its agent, had no right to insert said clauses in the policy; and that neither of said clauses form a part of the contract of insurance, the contract being simply that the agent was to issue insurance on the property, regardless of any mortgage or other insurance thereon.

In Agricultural Ins. Co. v. Anderson, 120 Miss. 278, 82 So. 146, it was held that: "Where the agent of the insurance company, under instructions from insured to locate his cotton and insure it at the place where it was found, having independently investigated its location and insured it as being in brick compartments, when in fact the cotton was in frame sheds, where fire afterwards destroyed it. In such case the policy will be reformed as for mutual mistake and recovery had thereon by insured." It was further held that: "In such case the insurer is estopped to deny that the cotton insured, although described in the policy as being located in brick compartments was in fact the cotton which was intended by both parties to be insured."

In Sutherland v. Federal Ins. Co., 97 Miss. 345, 52 So. 689, it was held that an agreement by the agent of a fire insurance company who issued the policy to renew a vacancy permit binds the company, and the permit not having been renewed, where loss occurs during the time for which it was to have been in force, and while the house was still vacant, recovery may be had on the policy.

It was further held that the agent of the fire insurance company by whom this policy was issued, remains the agent of the company, with power to bind it as to a vacancy permit, until the revocation of the agency is actually known to the insured; acceptance by him of a permit signed by another not charging him with notice.

See, also, New York Life Ins. Co. v. Smith, 129 Miss. 544, 91 So. 456; Continental Life Ins. Co. v. Clanton, 149 Misc. 289, 115 So. 569; Hartford Fire Ins. Co. v. J. R. Buckwalter Lbr. Co., 116 Miss. 822, 77 So. 798.

These various cases and the language used in the opinions deciding them show conclusively that it was the purpose of the court to bind the insurance companies by knowledge acquired by their agents while acting for the company, to the same extent, and with the same effect, as if the company or its principal officers were present, dealing in the matter. The recent case of Home Ins. Co. v. Thornhill, 165 Miss. 787, 144 So. 861, is to the same effect as the foregoing.

I cannot reconcile these cases with American Bankers' Ins. Co. v. Lee, 161 Miss. 85, 134 So. 836, N. Y. Life Ins. Co. v. O'Dom, 100 Miss. 219, 56 So. 379, Ann. Cas. 1914A, 583, and Germania Life Ins. Co. v. Bouldin, 100 Miss. 660, 56 So. 609, and a few cases following these, except upon the theory that these last-mentioned cases were decided without considering section 5196 of the Code of 1930, and as it stood in the codes at the time. In the O'Dom case, and also in the Bouldin case, there was no mention of the statute either in the opinion of the court, or in the briefs of counsel, and it is manifest that they were each decided upon the common law unaffected by the statute; the statute not being called to the court's attention. In my opinion we cannot consider these opinions as a construction of the statute. No doubt the statute was overlooked in both cases, by both court and counsel. As a rule, the court confines itself to consideration of the questions presented by briefs of counsel, and the decisions should not be construed as con-

struction of a statute where the statute is not invoked by either party to the litigation, and not referred to by the court.

In the case before us, Taylor, the agent, authorized to solicit insurance and collect premiums, and with the facts before him, induced the plaintiff in this case to pay for the insurance to keep it in force, by representing that the policy would not be affected by the fact of the transaction between Price and the Central Company. In my opinion his action binds the Insurance company.

Estoppel is recognized in the Bouldin case, supra, where at page 678 of 100 Miss., 56 So. 609, 613, it is invoked, the court saying: ''Cases frequently arise where the principal is estopped from denying the authority of his agent, and this is especially true where the agent, with the knowledge and consent of the principal, holds himself out to the world as having certain powers. The essence of estoppel is that the party asserting the agency was deceived by the conduct of the party against whom it is asserted, and, though fraud may be an ingredient of the case, it is not essential. The principal need not authorize the agent to practice a fraud on third parties, yet if he authorize his agent to transact the business with a third party, and in so doing the agent practices the fraud on the party, the principal is liable. The estoppel may be allowed on the score of negligent fault of the principal. Where one or two innocent persons must suffer loss, the loss will be visitel on him whose conduct brought about the situation.''

In the case before us there is no dispute of the fact that Taylor had authority to act for the company, both in soliciting insurance and in collecting premiums therefor. The policy involved in this case gave to both insured and insurer the right to cancel it. Common sense is a valuable aid in deciding lawsuits; and we know that insurance companies do not maintain in force policies which they have a right to cancel, when the premiums are not paid. It is true that the policy did not provide automatic

cancellation for nonpayment of premiums, but it gives the insurance company a right to cancel it; and we know the company would avail itself of this right in event of nonpayment of premiums. Clearly, the premiums were paid, because Price was led to believe that the policy would remain in force if he did so; and he was assured that this would be the case by the agent who collected the premiums. It would be a travesty upon justice, as I view it, to hold that the company could accept the premiums and keep the policy in force, with knowledge of the facts possessed by it, thereby ratifying the act of its agent; and then, when loss by fire occurred, deny liability therefor. There was no offer to repay the premium and cancel the policy. Not only this, but the adjuster of the insurance company, with knowledge of the facts, agreed upon a loss, and agreed, also, to pay it. The company was aware of the facts at the time this agreement was made, and must be held to an election; and is now estopped to deny liability under the policy.

The construction that I have placed upon the statute deals fairly with all parties, and promotes justice. I cannot consent to any construction of the statute giving to the insurance company all the advantages and none of the burdens of the business which it carries on in this state.