279 So.2d 625 (1973)
ATLAS ROOFING MANUFACTURING CO., INC. and Leopard Roofing Co., Inc.
v.
ROBINSON & JULIENNE, INC.
No. 47011.
Supreme Court of Mississippi.
June 5, 1973.
Henley, Lotterhos & Bennett, Hazlehurst and Jackson, McDavid, Edmonson & Stephens, Jackson, for appellants.
Watkins & Eager, Elizabeth Hulen, Jackson, for appellee.
*626 SMITH, Justice:
The appellants are Atlas Roofing Manufacturing Company, Incorporated, and its subsidiary, Leopard Roofing Company, Incorporated, who were plaintiffs in the trial court. The appellee and cross-appellant, who was the defendant below, is Robinson and Julienne, Incorporated, an insurance agency or insurance brokerage firm. The direct appeal by Atlas and Leopard, referred to as Atlas, is from a judgment recovered by it against appellee in the Circuit Court of the First Judicial District of Hinds County, Mississippi, pursuant to a jury verdict in its favor, in the amount of $2,000.00. It is contended on this appeal by Atlas that it was entitled to recover $12,900.03, and by the cross-appellant that Atlas was not entitled to recover anything. Alternatively, cross-appellant says that, if mistaken in its primary position, the amount of the verdict was for the jury and that, in that event, the judgment appealed from should be affirmed.
The gravamen of Atlas' complaint was that appellee, an insurance broker, had negligently failed to provide adequate fire insurance on its plant, and that, as a consequence, Atlas had been unable to collect the full amount of a fire loss sustained by it.
The manufacturing activities of Atlas involved running roofing felt through hot asphalt at high temperatures which were very close to the ignition point. A number of insurance companies had refused to write fire insurance on its plant for this reason, and others, having written it, cancelled it. The extreme fire hazard was increased by the absence of any sprinkler system, Atlas considering the installation of such a system to be too expensive.
In explaining the situation in which Atlas found itself with respect to fire insurance, Mr. Wood, its comptroller, who handled the transaction here involved for Atlas, *627 and who was the only witness offered at the trial by Atlas (except the broker, as an adverse witness), testified:
We had  instead of having a blanket policy on the whole plant, we had these policies that were written stating the amount of the specific insurance that covered each section of the plant, for there are more than one building involved in this plant and these buildings and machines located therein were scheduled.
......
We were having difficulty in maintaining coverage on the plant. Mr. Reilly was having trouble. He had companies he had written insurance with that wanted to cancel or some that were cancelled and then he would have to rewrite it. It was quite voluminous in the number of policies it took to cover the risk.
......
And the domestic companies were about forty different companies and they were cancelling their policies and we were getting notices of nonrenewal and so forth. And we were having a problem keeping Atlas Roofing covered. So I asked Mr. Sulser if I could investigate going to a surplus line market to try to get a coverage.
Appellee was called upon by Wood to investigate the possibility of improving this situation by procuring other insurance, preferably with one company on the entire plant. After considerable effort, appellee was able to obtain an offer from Lloyds of London to issue certain insurance to Atlas and Leopard, which he submitted to Atlas. Negotiations for this were conducted through Lloyds Louisiana representative, Excess-Surplus Lines, Incorporated, agency of New Orleans. In speaking of this, Wood said:
Well, initially, he had the authority to investigate the cost and whether it could be done this way. And then after he brought us a proposal we decided to let him write it with Lloyds of London.
In August, 1965, Excess-Surplus Lines issued a cover note confirming a policy of insurance to be issued by Lloyds in conformity with the note and specifying the coverage to be afforded as follows:
Outline of coverage: $725,000.00 excess of underlying $25,000.00 blanket Fire, Extended Coverage, Vandalism and Malicious Mischief insurance as per copy of Jefferson Insurance Company of N.Y. Policy No. S605594 on file with underwriters and/or companies, arranged as follows:

 Coinsurance
 1st layer $75,000.00 excess of
 underlying 25,000.00 10%
 2nd layer $300,000.00 excess of
 $100,000.00 52.5%
 3rd layer 350,000.00 excess of
 $400,000.00 90%

This cover note was transmitted to Atlas in August of 1965. The effective date of the insurance was August 1, 1965, and was to extend over a term of three years. The policy referred to in the cover note was duly issued by Lloyds and, acting upon instructions given by Atlas, was delivered by appellee to the holder of the mortgage upon the Atlas plant. This saved Atlas $11,499.10 in premiums.
More than two years later, on December 11, 1967, while the Lloyds policy was in force, Atlas sustained a fire loss at its plant in the amount of $180,205.39. After considerable correspondence with Lloyds, Atlas accepted from that company payment of $167,205.36. Almost three years later, on December 10, 1970, Atlas brought the present action against appellee and demanded judgment for the difference between the amount it had received from Lloyds and the total amount of the loss. The original declaration appears to have been predicated upon a breach of an alleged contract between Atlas and the appellee under which, it was charged, appellee had agreed to furnish insurance of the same type as that provided by the former policies, and had failed to do so. A demurrer was filed to this declaration, setting *628 up, among other things, that the claim was barred by limitations as provided by Mississippi Code 1942 Annotated section 729 (Supp. 1972), and that there was improperly joined in one count an action in tort with an action for breach of contract. Atlas immediately asked leave to file an amended declaration. The amended declaration restated the claim, and although retaining some of the language used in its original charge that appellee had not fulfilled its agreement with respect to the insurance afforded, it also charged that its loss was due to negligence on the part of appellee in providing inadequate insurance.
The contract feature of the claim appears not to have been pressed, or to have been tacitly abandoned in the course of the trial, and the question submitted to the jury was that of negligence. At the conclusion of the case, the jury returned a verdict for Atlas in the sum of $2,000.00. Atlas has appealed, contending that the jury verdict correctly fixed liability, but that it was in error in limiting recovery to $2,000.00 since, it is argued, it was entitled to recover the full sum of $12,900.03, that being the difference between the amount paid by Lloyds under the policy and the amount of the loss.
The proof showed that the cover note sent to Atlas correctly outlined the type and extent of the coverage to be afforded under the Lloyds policy. The policy referred to in the cover note and issued by Lloyds contained the same provisions for coinsurance stated in the note. It was delivered, at the request of Atlas, to the holder of the mortgage on the Atlas plant. No complaint as to any of these provisions was ever interposed by Atlas from August, 1965 to December 11, 1967. The "40 or 50" policies previously held by Atlas (and which constantly were changing) prior to the Lloyds policy were not exhibited with the declaration nor introduced into evidence and the terms of these policies are not disclosed in any adequate way, nor was it shown which were in effect and which had been cancelled immediately prior to or upon the effective date of the Lloyds policy. While Mr. Wood, comptroller of Atlas, said that he "did not believe" that the former policies had contained coinsurance provisions, this "belief" was excluded on timely objection and the matter was not pursued. Moreover, the amended declaration itself alleges that the former policies had, in fact, contained coinsurance clauses, the terms of which, as stated, were not proved. The witness' recollection and interpretation of the 40 or 50 absent and unidentified policies would not have sufficed to establish the actual terms of such policies with sufficient specificity in any event. Neither was it shown that there was available to Atlas, when the Lloyds policy was accepted, insurance upon its ultrahazardous enterprise which would have afforded better coverage whether at the same or greater premium, nor was it shown what the cost would have been for 100 percent coverage, nor that such coverage was obtainable.
It is argued by appellee, with considerable cogency, that Atlas was entitled to recover the full amount of its loss from Lloyds under the terms of the policy issued by it, and that Atlas had accepted less and failed to recover the entire loss solely because it neglected to pursue its claim in the courts. This contention, apart from any intrinsic validity, points up the question raised by the argument on behalf of Atlas that it would not have been able to recover the full amount under the terms of the policy even if it had brought suit against Lloyds. In order to sustain its position in this regard, Atlas had the burden of demonstrating that full coverage was not provided by the Lloyds policy and that consequently Lloyds was not liable. The difficulty in deciding this controversy in the present case lies in the fact that Lloyds is not a party to this suit and there is no way of knowing what its position would be nor what defenses it would interpose. Lloyds' liability, vel non, cannot be determined in an action to which it has not been made a party.
*629 It is true that:
An insurance agent owes the duty to his principal to exercise good faith and reasonable diligence to procure insurance on the best terms he can obtain. .. . Annot., 29 A.L.R.2d 187 (1953).
We think the record shows that appellee acted in good faith and with reasonable diligence, and that the terms of the insurance were fully and fairly disclosed to Atlas, both by the cover note and the policy itself.
In Mutual Life Insurance Company v. Hebron, 166 Miss. 145, 161, 146 So. 445, 448 (1933), it was said:
The declaration of the agent as to the extent of the liability of the company under the disability provisions of the policy, were in effect a mere expression of opinion as to the legal effect of the contractual provision, a matter about which lawyers and judges have widely differed, as shown by recent litigation in this court. The statements of this agent, made to the husband of the appellee, that the company would not take advantage of the delay, and that the appellee would lose nothing on account of the delay, was likewise in effect an expression of opinion... .
Atlas had fair notice of the terms of the insurance and more than ample time to reject it if it did not consider it adequate or satisfactory.
Here fraud was neither charged nor proved, the suit by Atlas does not purport to state a cause of action for breach of warranty, nor does the evidence establish that there was a warranty given Atlas by appellee.
In this case about five years elapsed between the delivery of the cover note to Atlas, in which the type and terms of coverage to be provided were spelled out, and in which the extent of coinsurance was specified exactly, before complaint about the terms was made by Atlas. In addition to the cover note, the policy, in which the terms were, of course, set out, had also been, at the request of Atlas, in the hands of Atlas' mortgagee.
In Travelers' Fire Insurance Company v. Price, 169 Miss. 531, 540, 152 So. 889, 892 (1934), appears the following:
Appellee either knew or should have known  she was affected with notice  of the sole and unconditional ownership and the public conveyance for hire clauses in her policy, and that the soliciting and collecting agent had no right, under the plain language of the policy, to waive those clauses, and that such a waiver amounted to nothing, would not be binding on appellant. Appellant, therefore, had the right to stand on those clauses. The result is appellant was entitled to a directed verdict.
In Rosenstock v. Mississippi Home Insurance Company, 82 Miss. 674, 681, 35 So. 309, 311 (1903), it was said:
The silent acceptance of the policy by the assured closed the contract, and bound the assured to the agreement tendered by the policy... .
See New York Life Insurance Company v. Mary E. O'Dom, 100 Miss. 219, 56 So. 379 (1911).
Zepponi v. Home Insurance Company, 248 Miss. 828, 833, 834, 161 So.2d 524, 526 (1964) was a case in which no one remembered the circumstances surrounding delivery of the policy. The insured stated that he never received it. After the loss the policy was found in possession of the mortgagee. The insured took the position that he was not charged with notice of the provisions of the policy. This Court held otherwise, saying:
In the case at bar, five years had elapsed since the issuance of the policy and it was found in the possession of Insured's mortgagee. Obviously it was held by the mortgagee for Insured as well as for the mortgagee. We hold as a matter of law that Insured is charged with knowledge of the terms of the policy upon which he relied for protection for nearly five years. Nearly all lenders demand insurance *630 and hold the policy. We take notice that there are countless transactions where the mortgagees hold the fire insurance policies. Human memory is a frail record and the fact of delivery should not rest thereon after five years. We hold that under such circumstances there was a constructive delivery. There is no sound reason for holding otherwise.
We have concluded upon the whole record that Atlas failed to meet the burden which rested upon it to establish by evidence that its loss was the result of negligence upon the part of appellee. The peremptory instruction requested by appellee should have been granted. The direct appeal is denied, and on cross-appeal the judgment appealed from will be reversed and judgment will be entered here for appellee.
On cross-appeal judgment appealed from is reversed and judgment is entered here for appellee.
GILLESPIE, C.J., and PATTERSON, ROBERTSON and SUGG, JJ., concur.